## MORRISON *v.* MORRISON, & a.

Where a person conveyed his property to a creditor in satisfaction of his debt, and received back security for the support of himself and wife, during life, if appearing that the value of the property was greater to a substantial amount than the debt, and that the obligation for support was a substantial part of the consideration for the conveyance ; it was *held* that such conveyance was fraudulent and void as to the grantor's creditors.

When the wife had commenced proceedings for a divorce about the time of such conveyance, and for causes existing before, and afterwards obtained a decree of divorce and for alimony for those causes, and the conveyance was made to defeat her claim for alimony, it was held that she stood in the relation of creditor to the grantor, and might avoid the conveyance.

When there was an ante-nuptial agreement under which mutual bonds were given ; and in the one given by the wife it was stipulated that it should be void, if upon the decease of her husband she should release her right of allowance and dower, and all rights she might be entitled to by law in his estate, it was *held* that the right to alimony as against the husband was settled by the decree.

That although there were terms in the recital in the bond looking to a release by the wife in case of a dissolution of the marriage, otherwise than by death, yet by a fair construction of the bond the right to alimony was not cut off.

And also that alimony is to be regarded as an allowance to the wife for present support, which, under the circumstances, she could not be required to take at the husband's house ; and, therefore, it was reasonable that he should contribute to her support elsewhere.

When upon an execution for alimony, the body of the husband was arrested and imprisoned, but released on his giving bond to take the poor debtor's oath within the year, or surrender himself, at the jail at the end of it, a levy of the same execution upon the debtor's real estate within the year, the debtor not having taken the poor debtor's oath, is void.

THIS is a bill in equity to set aside a conveyance of a farm by Thomas Morrison to the other defendant, William R. Morrison, his son, upon the ground that it was fraudulent as to his creditors. The plaintiff was the wife of Thomas Morrison, and having obtained a decree of divorce and alimony, levied her execution upon a part of this farm, which was set off in part satisfaction of her claim.

The bill alleges that the plaintiff obtained an injunction against any conveyance by Thomas Morrison, that on the day of its service upon him, and about the same time, he conveyed the farm to his son, the other defendant, to defeat any claim she might have for alimony. The answers admit the conveyance, but allege that it was made before the service of any injunction, and for good consideration and in good faith, to pay debts due from the father to the son for many

years' labor, and also to a daughter for many years' service by her. That the son also gave to his father at the same time his bond with condition to support his father and mother during life, which was secured by a mortgage back of the same farm; and that the son also mortgaged the farm to his sister to secure to her the payment of one thousand dollars on the death of the father, for the debt to her.

The answers also allege an ante-nuptial agreement between the husband and wife, and mutual bonds between them; that of the wife reciting that a marriage was contemplated between them; that the said Thomas was possessed of some property, and might have more, and might die possessed of it; and that it was agreed in consideration of said marriage that in case of the death of either party, or other dissolution of the marriage, the surviving party will not claim or take any interest whatever in the property of the deceased, but release all claim to the heirs of the deceased; with a condition that if the said Mary shall well and truly release upon the decease of the said Thomas all her rights of allowance and of dower in the estate of the said Thomas, and all other rights she might be entitled to by law in said estate, then the bond to be void, otherwise in force. The bill prayed that this deed to the son be declared null and void, and for general relief.

*Barnard and Sanborn*, for plaintiff.

*Pike & Blodgett*, for defendant.

BELLOWS, C. J. On the whole evidence, we think, the son and daughter worked for their father upon an agreement and understanding that they were to be paid by having the property at his decease.

There does not appear to have been any bargain to pay them in money, but they were his only children; and they were to contribute their services in improving and earning property, and were to have it at his decease.

It was not very definite, but left somewhat loosely as such things are apt to be; but it is clear that these services were not gratuitous, but to be paid for in some way, and we have no doubt that a payment in money or the property itself to an amount that would be a reasonable compensation for those services, would have been good against the creditors of Thomas Morrison, if done in good faith.

Therefore a conveyance of so much of the farm as would be a reasonable compensation for those services, made in good faith, would be good. But if he conveyed to the son more than enough for that purpose, and a part of the real consideration was the son's agreement to support his father and mother during life, the conveyance would not be good against creditors. There was no determination of the amount fairly due to the son and daughter. The amount fixed upon to go to the daughter was $850 for about fifteen years' services in the family; deducting $200 paid her on her marriage in 1860, and she, according to her own evidence, earning in various

ways in outside work, enough for her clothing.   Her idea seems to
have been that this sum was fixed upon to give her an equal share
with the son.   The son thinks there was due fairly to him $1000.
Adding this to the sum he is to pay his sister at the father's decease
without interest would make $1,850, though fairly subject to a rebate
of interest for the time the father might be expected to live, which,
as he was about seventy-five years old, would be nearly eight years,
which would very materially diminish the present value of that sum.
The value of the real estate is not shown directly.   The original
farm was bought by Thomas Morrison for about $1,400 or $1,450 in
1845, then in bad condition, but since much improved; $1,000, as
the son thinks, having been expended on the buildings, fences
improved, and the condition of the farm generally improved.   Two
small pieces added at the cost of $180, and the son thinks the farm
was worth some over $2,000, but not $3,000; and he thinks the
personal estate worth about $300.

The evidence, we think, very clearly shows that the property
conveyed to the son was worth more than the father's debt to the son
and daughter by a substantial amount.   And the provision for the
father's support and that of his wife during life, indicates that the
parties supposed it to be worth more.   The conveyance then must
be regarded as with a trust to the grantor, to secure his maintenance;
and that being a substantial part of the consideration, it must be
regarded as fraudulent and void as against creditors.   *Smith* v.
*Smith*, 11 N. H. 465; *Albee* v. *Webster*, 16 N. H. 362.   There it
was held that if a full price was paid, although in addition there was
an agreement to maintain the grantor, and there was no interest to
defraud creditors, the conveyance would be good; but if the agree-
ment to maintain the grantor formed a substantial part of the
consideration, the whole was bad.   *Albee* v. *Webster*, 369.

It is obvious, it must be so; for a man can never be allowed to
secure his property to the use of himself and his family to the
prejudice of his creditors.   *Coolidge* v. *Melvin*, 42 N. H. 516.   It
is clear, we think, in the case before us, that the claims of the son
and the daughter were not equal in amount to the value of the
property conveyed to the son.

We think that the proofs show that the conveyances were made
to place the property beyond the reach of the plaintiff, who had left
her husband under such circumstances as to cause the parties to ap-
prehend that she would apply for a divorce, and obtain an injunction
to prevent the conveyance of this property, and thus defeat her claim
to alimony.   It apears that she had already commenced proceedings
for a divorce, and on the afternoon after this conveyance was made
she served an injunction upon the husband.

The time when the conveyances were made, very soon after mid-
night on Monday morning, and the statements of the parties leave
no room to doubt that they were made at that time to secure the
property before such an injunction should be served.

The question then is whether the plaintiff stood in a position to be

entitled to avoid this conveyance, and if so whether the levy of her execution under the circumstances was valid.

The statute of 13 Eliz. ch. 5 adopted in this state, for the avoiding of grants, conveyances &c. fraudulently made &c.,to defeat creditors and others of their just and lawful actions &c., provides that all such conveyances shall be taken and deemed as against all persons whose actions, suits, debts, accounts, damages, penalties, forfeitures &c., might be in any wise disturbed, hindered, delayed or defrauded, to be utterly void.

At the time these conveyances were made the wife did not stand in the relation of creditor to the husband, but she had commenced proceedings for a divorce from him for causes existing at the time of such conveyances, and she prosecuted her suit, and afterwards for those causes obtained a decree of divorce and an award of alimony.

It appears from the testimony that the parties to this conveyance, from previous threats of the wife, apprehended such a proceeding by her, and to secure the property against any decree she might obtain, in great haste, lest an injunction should be served upon them they made these conveyances, of substantially all the property possessed by the husband, both real and personal.

Under these circumstances we are forced to the conclusion that these conveyances must be regarded as made by the parties with the intent to defeat and defraud the plaintiff of the means of satisfying any decree for alimony that she might obtain. In her proceeding she obtained a decree for alimony for a cause existing at the time, and she therefore became a creditor of the defendant, Thomas Morrison. Whether she is to be regarded as an existing or subsequent creditor is not material, because it is shown that it was her claim that the parties especially intended to defeat, and it is too well settled to need the citation of authorities that a conveyance made with intent to defraud subsequent creditors is void as to them. The term *creditors* and others in the statute of 13 Eliz. ch. 5, is construed to take in all manner of persons, as well creditors after as before the conveyance. *How* v. *Ward*, 4 Greenl. Rep. 195, & cases cited; *Taylor* v. *Lones*, 2 H. & R. 601; *Stillman* v. *Ashdown*, 2 H. & R. 481; In Troyne's case, 3 Co. Rep. 82, it is said to have been resolved that the statute of 13 Eliz. ch. 5, extends not only to creditors but to all others who had cause of action or suit or any penalty or forfeiture. Accordingly it has been repeatedly held that a conveyance to defeat any judgment that might be rendered in an action for a tort, as for slander or flowing plaintiff's land, is void as to such plaintiff who afterwards recovered judgment. *Jackson* v. *Myers*, 18 Johns. 426; *Jackson* v. *Seward*, 5 Cow. 67; In *Fox* v. *Hills*, 1 Conn. 294, such a conveyance was held to be void at common law. Nor does it make any difference that the plaintiff here was the wife of the grantor.

In *Rider* v. *Kidder*, 10 Ves. 360, it was decided that where the husband before marriage covenanted with trustees to pay the wife a sum of money if she married him, she was a creditor within the

statute of 13 Eliz. ch. 5 against fraudulent conveyances. In *Feigley* v. *Feigley*, 7 Md. Rep. 537, it is held that the words creditors and others, include a wife who is made the victim of the husband's fraud. See 19 U. S. Dig. 334, § 85. Besides, the court is constantly in the habit of restraining the conveyance of the husband's property to protect the wife's claim for alimony. As stated before, the plaintiff, at all events, became a creditor of the grantor, and even if she is to be regarded as a subsequent creditor, yet as the intent was to defraud her, she may avoid the conveyance. *Coolidge* v. *Melvin*, 42 N. H. 510.

In *Sidensparker* v. *Sidensparker*, 52 Maine Rep. 481, it was held that a conveyance of land when part of the consideration was an agreement to maintain the grantor was a continuing fraud and void, both as to present and future creditors. So in *Pennington* v. *Clifton*, 11 Ind. Rep. 162, it was held that a conveyance, with a secret trust, is a continuing fraud and void, as to all creditors during its continuance. 19 U. S. Dig. 334, § 81.

It is urged that under the plaintiff's ante-nuptial agreement, she is not entitled to alimony out of the husband's estate. It would seem, however, that this question must be regarded as settled by the decree—certainly as far as the husband is concerned. Besides, we do not think that a fair construction of her bond would deprive her of the right to alimony.

By the terms of her bond, if, upon the decease of her husband, she shall release her right of allowance and dower in his estate, and all other rights in it she might be entitled to by law, the bond was to be void; and although there are terms used in the recital that seem to look to a release in case of a dissolution of the marriage otherwise than by death, yet, as the condition is performed by a release after his death, we are inclined to think by a fair construction of the bond, the right to alimony is not cut off.

The alimony, in fact, in theory, is an allowance for the support of the wife, which, under the cirumstances it is considered, she ought not to be required to take at the husband's house. *That* she was entitled to had she remained there ; but as the conduct of the husband was such that she ought not to be compelled to stay with him, it would seem reasonable that he should contribute to her support elsewhere ; and there is nothing in the bond, we think, that leads to a different result.

The remaining question is as to the validity of the extent, as the husband had already been arrested upon execution founded upon this decree for alimony, and had given bond to take the poor debtor's oath within a year, or surrender himself at the end of it. The decree of alimony was at June term, 1868, and execution against the body of Thomas Morrison was issued June 22, 1868, and he was arrested and committed to jail on the fourth of July following, and was soon after discharged upon his giving bond as aforesaid, to take the poor debtor's oath within a year, or surrender himself at the jail at the end of it. The levy upon the land in question was made September 3, 1868 upon the same execution, and before the said Thomas Morrison had taken

the poor debtor's oath ; and it is urged by defendant's counsel that no
valid extent could be made upon the estate of said Thomas until the
proceedings upon the arrest were fully settled and determined.
Upon that point the authorities are numerous that when a creditor
elects to take his debter in execution, his remedy against his goods
and estate is thereby suspended.   In *Tappan* v. *Evans*, 11 N. H.
311, 321, it is laid down that the arrest and imprisonment of a debtor
in execution is a good bar to any proceeding upon the judgment,
either in law or in equity ; holding that his right to proceed against
the property is suspended, and that he cannot file a bill in equity to
reach the debtor's equitable assets.   Such is distinctly the doctrines
of *Stillwell* v. *Van Epps*, 1 Paige Ch. Rep. 615.   So in *Butler* v.
*Washburn*, 25 N. H. 256, it was held, that after arresting the body
a collector could not distrain the property for taxes.   In *Sunderland*
v. *Loder*, 5 Wend. 58.   In *Cooper* v. *Bigalow*, & al., 1 Cow. Rep.
56, it is held that taking the body of the debtor in execution is in
law a satisfaction of the debt, and it is said to be well settled at
common law, and such appears to be the doctrine in *Foster* v. *Jack-
son*, Hob. 52, which was decided on great consideration in the 13th
year of the reign of James the First.   So in Barnaby's case, 1 Stra.
653, it was held, that a creditor who has his debtor in execution
cannot be a petitioning creditor for a commission in bankruptcy.   In
*Taylor* v. *Waters*, 5 M. & S. 104, it was held, that the taking of
the body in execution does not extinguish the debt, but it bars the
remedy against the debtor, and in like manner precludes a set-off
against him.   There .the defendant attempted to set-off a judgment
against plaintiff, upon which the plaintiff was then under arrest,
but the application was denied.

By acts of parliament the common law has been changed, so that
if a debtor dies while in execution, a new execution may be had
against his property.   Stat. of 21, James 1, ch. 24 ; or if he escape
from prison he may be retaken ; 8 & 9 Wm. 3, ch. 26.   See Hob.
Rep. p. 60, 145 n. 6, to *Foster* v. *Jackson*.

In *Brinley* v. *Allen*, 3 Mass. *561, it was held, that an officer could
not arrest the body and attach property on the same writ ; that when
he had taken the body, the writ was completely executed, and no
further proceedings could. be had thereon, but to make return.

At common law, a discharge of a debtor arrested on an execution
with the consent of the creditor, is a discharge of the debt.   See
*Abbott* v. *Osgood*, 38 N. H. 280, and cases cited.   By our statute,
a discharge from imprisonment under an execution, by taking the
poor debtor's oath, forever discharges the person of the debtor from
arrest or imprisonment for the same debt ; but his estate shall always
remain liable therefor ; and a new execution may, at any time, issue
against such estate.   General Statutes, 222, § 11.   There is no
provision, however, which authorizes the creditor to proceed against
the property of his debtor upon the same execution on which the
debtor is committed to prison ; although on the return of an execu-
tion on which the debor has been committed, he may have a further
execution against his property, notwithstanding he is not discharged ;

and upon the satisfaction of such execution, the debtor shall be discharged.   General Statutes, ch. 216, sec. 11.   The same provision is in the Revised Statutes, ch. 193, § 12.

Independent of these statutes, it is very clear, we think, that upon common law principles as recognized in this state, a creditor could not proceed against the property of his debtor, while he had his body under arrest for the same debt.   These statutes, which were probably passed in view of the provision allowing the debtor to be at large for a full year after his arrest, do not provide for taking his property upon the same execution upon which his body has been imprisoned ; and we are not aware of any principle that will authorize us to extend this remedy so as to allow the taking of property upon the same execution ; although the reasons for not so extending it may not seem very obvious.   It is sufficient, however, to say that the legislature did not think it best to go any further, and we must be governed by the law as we find it.

So far as the legislature has seen fit to alter the common law, we must give effect to it ; but we think it very clear that this provision cannot be construed to authorize the taking of property upon the same execution by which the debtor was imprisoned.   In fact, it may very well be regarded when the debtor's body has been arrested and imprisoned as *functus officio* as having done its offence.   By the arrest and imprisonment of the debtor in this case, the execution on which he was arrested had done its office, and the plaintiff's remedy against him was suspended, at least upon that execution.   And that being the case, we think the extent was invalid.   The suspension of the remedy, for aught we can see, must have the same effect, for the time being, as the discharge of the judgment ; and in that case it has been held that an extent is void.   *King* v. *Goodwin*, 16 Man. 63. This was an extent upon a pluries execution, and it appearing that the debtor had been arrested on an alias, and liberated with the consent of the creditor, it was held that the judgment was thereby satisfied, and that the extent was void.

In the case before us, the writ of execution required the officer to levy the sums of money mentioned on the goods, chattels, and lands of the debtor, and in default thereof to arrest his body, &c.   His body was arrested and return of it made, and there is no suggestion that it was without the direction of the plaintiff.   Under these circumstances, we must regard the extent as invalid.   In *Tappan* v. *Evans*, before cited, where the creditor had the body of his debtor in execution so that his right to prevail against his property was suspended, it was held that he could not file a bill in equity founded upon the judgment to reach equitable assets, and much less could he take the debtor's legal assets upon an execution which had already fully performed its office.

It appears that Mrs. Wadleigh has a mortgage upon the entire farm, including the tract in question, and no effectual decree could have been made without making her a party ; but as the case is disposed of upon other grounds, this is not now material.

*Bill dismissed.*