Belknap,
Feb. 6, 1945. } No. 3504.

### C. A. LUND & COMPANY

*v.*

### RICHARD S. ROLFE.

*Harold E. Wescott* (by brief and orally), for the plaintiffs.

*F. Maurice LaForce* (by brief and orally), for the defendant.

BRANCH, J.   The C. A. Lund Company, predecessor of the plaintiff partnership, and a wholly owned subsidiary of the Northland Ski Manufacturing Company, a Minnesota corporation, commenced the manufacture of skis and allied equipment at Laconia in this state in October, 1937.   By April 1, 1942, the Laconia plant employed one hundred and thirty-seven persons, with a monthly payroll of about $15,000.   The agreed statement in regard to the stock ownership of the Northland Ski Manufacturing Company is not entirely clear, but the plaintiffs cannot be harmed if we accept the interpretation placed upon it by their counsel.   We quote from their brief: "The stockholders of the corporation consisted of the father, mother, and the children of the Lund family, namely: C. A. Lund, Emma A. Lund, Carl F. Lund, Ambrose C. Lund, Harriet M. Lund, and Alice J. Lilleburg."   By means of voting trusts, the control of the corporation was vested solely in Carl F. Lund and Ambrose C. Lund.   On April 1, 1942, the plaintiff partnership consisting of Carl F. Lund, Ambrose C. Lund, C. A. Lund and Harriet M. Lund, all stockholders of the Northland Ski Manufacturing Company, "took over" in an undisclosed manner, the Laconia plant and have since continued to operate it under the name of C. A. Lund and Company.   Since April 1, 1942, there have been no changes in the personnel or type of business conducted before that date except such as normally occur in the operation of any manufacturing business.   It is asserted in the plaintiffs' brief that "actually, nothing has happened to this manufacturing business except that two members of the Lund family have withdrawn their interest in the Laconia plant."

For the first six months of 1943, C. A. Lund Company, if still in business and upon their experience, would have been ordered to pay contributions at the rate of 2.5%; for the second six months of 1943 at 2.3%; for the first six months of 1944 at the rate of 1.3%.   These reductions would have arisen under the provisions of R. L., c. 218, with reference to merit ratings based upon the experience of the business for three years.

The defendant is charged by the statute with the duty of determining the merit rating of employers in accordance with their actual experience in the payment of contributions on their own behalf and with respect to benefits charged against their accounts, with a view to fixing such contribution rates as will reflect such experience. R. L., c. 218, s. 6E.   Section 1 of the act defines employer as follows: "H.   'Employer' means (1) Any employing unit which in

each of twenty . . . weeks . . . within either the current or the preceding calendar year, has or had in employment, four or more individuals, irrespective of whether the same individuals are or were employed in each such week;

"(3) Any employing unit which acquired the organization, trade or business, or substantially all the assets thereof, of another which at the time of such acquisition was an employer subject to this chapter." R. L., c. 218, s. 1H.

The defendant has ruled that since there was a change in ownership on April 1, 1942, the plaintiffs will not be entitled to the low rating until January 1, 1946 when they will have had an independent existence and experience for three years. The plaintiffs have paid contributions under protest to the unemployment compensation fund of 2.7%.

The question to be decided is whether or not the partnership is entitled to succeed to the merit rating of the corporation. It is argued by the plaintiff that "the same personnel continue to carry on the same manufacturing business as before and it is not fair or just that the partnership should be denied the merit rating experience of the corporation." The short answer to this argument is that the statute contains no provision for the transfer of the merit rating of one employer to another, and the question of the justice or the fairness of the present arrangement is for the Legislature to determine. In order to grant the relief prayed for it would be necessary for the court, in effect, to write into the statute a new provision authorizing such transfer, which would clearly transcend the limits of judicial power.

It is stated in the defendant's brief and not controverted by the plaintiffs, that the laws of forty-two states now provide for experience ratings and that thirty-eight of these statutes make provision for transfers of experience ratings from one employer to another in certain cases. This fact lends added force to our conclusion that relief in such cases must be sought from the Legislature rather than from the courts.

It appears to be argued, however, by the plaintiffs, that C. A. Lund and Company, the partnership, is the same employer as C. A. Lund Company, the corporation, and for this reason entitled to the merit rating experience of the latter. In order to reach this conclusion we are urged to disregard "the fiction of corporate entity" and to pierce "the veil of corporate structure" for the purpose of accomplishing justice. Few courts have shown greater readiness

than this court to disregard the fiction that a corporation "is a being independent of those who are associated as its stockholders" when justice demands it (*Bowditch* v. *Company*, 76 N. H. 351, 354; *Dow* v. *Railroad*, 67 N. H. 1), but such a procedure does not help the plaintiffs in the present case. Looking behind the corporate veil of the C. A. Lund Company, we find six stockholders whose rights were all controlled by two of their number through voting trusts. Looking at the composition of the plaintiff partnership, we find four partners, all equally entitled to participate in the management of the partnership business and entitled to share equally in the profits and losses of the business. By no stretch of the imagination can it be said that the partnership is the corporation in a different form. The fact that "two members of the Lund family have withdrawn their interest in the Laconia plant" effectively prevents such a conclusion. In short, this is a case where a new employer seeks to succeed to the merit rating of his predecessor. To permit this result, legislative authority is necessary. None is to be found in our statute.

This conclusion is in accord with the only judicial authorities on the question which have been called to our attention; *i.e. Schwob Mfg. Co.* v. *Huiet*, 69 Ga. App. 285; *Florida Industrial Commission* v. *Schwob Co.*, 14 So. (2nd) 666.

*Judgment for the defendant.*

PAGE and BURQUE, JJ., dissented: the others concurred.

PAGE, J., *dissenting:* The opinion of the court will apparently lead to unfortunate results, since it rests the right to continuity of merit rating upon the continuity of a form. Consistently it would appear to follow that if the Lund family, sole owners of the stock of the corporation, had sold all of their stock to utter strangers, there being no change in the formal corporate entity, it would result that the corporation would continue, for at least a year, to pay contributions upon the basis of prior experience. That the Legislature could have intended thus to continue the rating for the benefit of such utter strangers, while denying it to those who, for all we know, are substantially the same as those who created the employment experience, rests apparently upon attaching emphasis to form, rather than to realities.

If a corporation be the employing unit and the experience of

employment in its manufacturing plant be such as to create a merit rating, that rating is not the creation of a cold, formal corporate entity (though for convenience we call the corporation a person), but of the actual men and women who own and have interest in the plant through stockholding, and control, and management. The continuity of that merit rating (that is, the continuity of the employment experience) does not depend upon the continuity of the formal corporate entity, but rather upon the substantial continuity of the men and women mentioned. To say that the Legislature did not have this principle in mind and that the act is not to be interpreted accordingly, is to charge the Legislature with adopting a theory of the real nature of corporations that has not been recognized in New Hampshire during the mature life of any member of the Legislature that passed the act.

There is no conclusive evidence that the change here made could affect substantially the continuity of the employment experience of the Laconia concern. To be sure, in the old corporation two of the four present partners seem to have been voting trustees for all of the stockholders, but we have no information as to the extent, if any, that the voting trustees were controlled by or answerable to the other members of this family concern, one of whom, C. A. Lund, though owning nearly 65 per cent of all the stock, was not a trustee. Nor do we know the terms upon which the owners of less than 10 per cent of the stock voted the rest of it. On the other hand, it is agreed that since the date the partnership acquired the plant "no changes have been made in the personnel or type of merchandise manufactured except such as normally occur in the operation of any manufacturing business." It thus appears that it is neither agreed nor found (1) that any substantial change was made affecting continuity of employment experience, or (2) that no such change was made.

The Act of Congress, U. S. C. A., *Tit.* 26, s. 1602, indicates a decided caution that reduced rates shall depend upon continuity of employment experience, and the interpretation placed upon it by the Social Security Board provides that reduced rates shall not be permitted when the basic experience factor has been so impaired by factors "unrelated to the employer's experience that such employer's own experience is no longer the basic determinant." This is the background of our act—that there shall be a realistic approach to the problem presented here, and the act ought so to be interpreted, rather than adopting the technical approach which may in one case admit

impairing influences, without affecting continuity of merit rating, while in others denying continuity when substantial impairing influences are absent.

It would seem preferable to have sent the case back for the determination of the question whether the changes made in organizational form, in view of all the circumstances, resulted in substantial threat to the employment experience of the concern. If they did, of course, the order made by the defendant should be sustained; if they did not, the result would seem properly to favor the plaintiff.

BURQUE, J., concurred in the foregoing opinion.