Hillsborough,
No. 4605.

JAMES I. HINES *v.* VIOLET E. DONOVAN & a.

Argued January 7, 1958.

Decided March 20, 1958.

*Upton, Sanders & Upton (Mr. Frederic K. Upton* orally), for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell (Mr. Wadleigh* orally), for defendant Bean.

*McLane, Carleton, Graf, Greene & Brown,* for defendant Donovan, furnished no brief.

BLANDIN, J. The first issue to be decided is whether the plaintiff James I. Hines or the defendant C. Lovell Bean was the effective cause of the sale of the real estate of Violet Donovan. On this question the Trial Court has found in favor of the plaintiff Hines. It seems unnecessary to detail the evidence because we believe that the Court's conclusion is a permissible one on the record before us. It follows that the defendant's exception to this finding is overruled. The plaintiff therefore is entitled to the commission (*Williams* v. *Walker,* 95 N. H. 231) unless there are other barriers to his recovery. The defendant asserts that such exist in that (1) the plaintiff's "own fraud bars recovery by him"; (2) even in the absence of fraud, he "is estopped by his own conduct from claiming commission"; and (3) paragragh 10 of the purchase and sale agreement between Donovan and the buyers, Norman J. Carter and his wife, is decisive in favor of Bean.

In order to determine the validity of these claims it is necessary to examine certain essential facts found by the Trial Court and by which we are bound if reasonable persons could so find on this record. *Romano* v. *Company,* 95 N. H. 404, 406, and authorities cited. It appears the plaintiff was employed by Mrs. Donovan to act as her attorney in settling her husband's estate which included the restaurant property, the sale of which caused the dispute. The plaintiff, who also deals in real estate, asked Mrs. Donovan on May 23, 1955, if he might list the property to which she replied, "Why certainly, Jim I hope you can sell it. I haven't had a nibble yet." Immediately after this the plaintiff dispatched an employee, Don Knapton, to see Carter who operated a local restaurant. Carter told Knapton he was "not interested," that various prices had been quoted all the way from $45,000 to $100,000 and that

even $45,000 was far too high so he had dropped the matter entirely. However, on being told the price was now $30,000, Carter, though telling Knapton he was still uninterested — a statement which he later admitted was false, said that there should be no trouble in selling at a figure of around $30,000, but that if he did anything he would have to act through the defendant Bean Real Estate Agency because the local representative, a Mrs. Nerine Duarte, was his wife's best friend. No sooner had Knapton left than Carter got in touch with Mrs. Duarte and that same night he went to see Mrs. Donovan and told her that he and his wife would buy the property for $33,000 if the financing could be arranged. On May 25 an attorney employed by the defendant Bean prepared a first draft of a purchase and sale agreement between Mrs. Donovan and the Carters. On May 27, the plaintiff, acting for Mrs. Donovan, secured a copy of the proposed agreement which contained a provision, later to become clause 10 of the completed contract, which read as follows: "It is understood and agreed that this sale has been effected by the Bean Farm Agency, Concord, New Hampshire, and that upon delivery of the deed and bill of sale herein referred to, the vendor will pay said Bean Farm Agency the sum of three thousand dollars ($3,000) as full compensation for the part of the Bean Farm Agency in effecting said sale." Deciding that this would not sufficiently protect Mrs. Donovan, as in the event that Carter defaulted she might still be liable for the commission to Bean, the plaintiff had the clause amended to read as follows: "It is understood and agreed that this sale has been effected by the Bean Agency, Concord, New Hampshire, and that the vendor will pay said Bean Farm Agency the agent's commission in the sum of three thousand dollars ($3,000) if, as and when title passes, however, in the event the vendor shall fail to go through with this agreement for any reasons except defect in her title or failure to perform on the part of the purchasers the said vendor will pay the said Bean Farm Agency said three thousand dollars ($3,000) commission on demand."

Following this, the plaintiff on May 28 disclosed to Mrs. Donovan his claim for the commission, telling her that he felt paragraph 10 was a misrepresentation and that he, and not Bean, was legally entitled to the commission to which she remarked, "Of course, I didn't get a real offer up until the time you listed it." In spite of this, she said she felt the Bean agency having done most of the work was entitled to the commission. The plaintiff

told her that he thought it was an advantageous sale for her and that to protect her interest he would not make his claim for a commission until the deal went through as he believed that if he did the defendant would prevent the sale. He said that he preferred to take his "chances" on getting his commission rather than to jeopardize her interest. He informed her that when the transaction was consummated so that her money was safe, he would bring a bill in equity to prevent the payment of the commission to Bean and to obtain it for himself, which he did.

The contract, which was witnessed by the plaintiff, was executed by the principals on May 31, 1955. The plaintiff's bill in equity, brought to enforce his claim for a commission, was served on Mrs. Donovan on June 9, 1955, and the following day when the deeds were executed and the sale about to be consummated, the plaintiff informed the defendant Bean that he was going to claim the commission. At this Bean picked up the checks and said to the Carters, "Come, let's go. The deal is off." However, after a discussion with his own lawyer, he agreed that the money should be paid into court and that the court should decide who was entitled to it.

Taking up the defendant's claims, it appears the argument that because of Hines' fraud, or even in the absence of such fraud, he is estopped from claiming his commission does not require extended consideration. The plaintiff was not a party to the contract and made no representations therein. All he did was to attest the signatures of the parties. Mrs. Donovan testified that when she signed she intended to perform the agreement, in spite of Hines' advice, as she believed him to be wrong. In this state of the facts, it appears the cases cited by the defendant, holding that where a party to a contract signs it and does not intend to keep its terms he may be guilty of fraud (see *Hunt* v. *Company*, 94 N. H. 421, 423), are not applicable. The plaintiff was under no duty to make full disclosure of his intentions to the defendant as no relationship of trust or confidence existed between them. *Jenness* v. *Payne*, 81 N. H. 308. These experienced Yankee traders, as the record shows them to be, were dealing at arms' length, or perhaps it would be more accurate to say they were not even dealing within pistol range of each other. With reference to this phase of the affair the Trial Court, after seeing and hearing the parties and their witnesses, found as follows: "It is also argued by defendant Bean that Hines is estopped from claiming a commission because

he approved, as attorney for Mrs. Donovan, the purchase and sale agreement. At the execution of the agreement Hines found himself in the unenviable position of either looking after his own interests first or those of his client. To his credit he chose the latter course and advised her to sign because he felt it was for her best interests. He disclosed to Mrs. Donovan his claim for commission prior to the execution of said agreement." The Court also found that "Bean did not rely in good faith upon any conduct of Mr. Hines . . . [to his] detriment or prejudice," but on the contrary, that he and the Carters "connived together to deprive Hines of his commission and persuaded Mrs. Donovan that Bean was responsible for the sale," and that therefore there was no estoppel in Bean's favor. *Thompson* v. *Currier,* 70 N. H. 259, 266; *Eyers Woolen Co.* v. *Gilsum,* 84 N. H. 1, 7; 19 Am. Jur., Estoppel, s. 86. There was evidence upon which these findings could be made and it follows the defendant's exceptions to them and the Court's conclusion, must be overruled.

The defendant's contention that the Court erred in ruling that paragraph 10 was unenforceable must also fail. Bean claims the agreement between the Carters and Mrs. Donovan was for his benefit as a third party (*Knox* v. *Perkins,* 86 N. H. 66, 72); however, the Court has found that the clause was obtained by the defendant's connivance with the Carters for the express purpose of depriving the plaintiff of the commission to which he was entitled. That the defendant cannot be allowed to profit by his own wrong is too elementary a proposition to require citation. Upon this finding, the Court properly ruled as a matter of law (see *Perry* v. *Company,* 101 N. H. 97) that paragraph 10 was unenforceable.

We have then a situation where on sufficient evidence plaintiff Hines has been found to be the efficient cause of the sale. He would normally be entitled to the full commission. However, there remains a further important consideration.

We have sustained the findings of the Trial Court with respect to the integrity and good intent of the plaintiff in his conduct as Mrs. Donovan's attorney. But we believe it necessary in the best interest of the legal profession and in order to avoid similar unfortunate situations which might otherwise arise in the future to qualify our approval. The circumstances which arose because of competition between Hines and Bean for the commission may be thought to have confronted Hines with the ethical problem of

whether he could properly continue to represent his client with respect to the negotiations for the sale, and at the same time undertake to further his own conflicting interest as a broker. In consequence of his decision to continue as counsel, Mrs. Donovan was deprived of disinterested advice, which the better procedure would have demanded, until after she had executed a contract obligating her to pay a commission to Bean. The requirement 'that an attorney shall not represent conflicting interests, at least without full disclosure to the client both of the facts and their significance, is designed "to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests rather than to enforce to their full extent the rights of the interest which he should alone represent." 1 Thornton, Attorneys at Law 308, s. 174. See also, 5 Am. Jur. 288, s. 48. Mrs. Donovan, whose position had been accurately described by her present attorney as a "stake holder" rather than an adverse party, has been put to extra expense through no fault of her own because she has had to retain new counsel to represent her in closing the sale and in this action. This was necessitated because her lawyer acted in the dual capacity of attorney and realtor. In all the circumstances, justice requires that Mrs. Donovan be reimbursed from the fund of $3,000 deposited in court for her reasonable expenses incurred in retaining new counsel and thereafter participating in these proceedings. The expenses are to be determined by the Superior Court unless the parties agree. The amount of the commission to which the plaintiff is decreed to be entitled should be correspondingly reduced.

*Remanded.*

WHEELER, J., did not sit; the others concurred.