Grafton,
No. 6219.

KATHARINE HOLMAN STEPHENSON

*v.*

EDWIN CHARLES STEPHENSON

KATHARINE HOLMAN STEPHENSON

*v.*

EDWIN CHARLES STEPHENSON *& a.*

TIMOTHY D. STEPHENSON *& a.*

*v.*

SAME.

June 1, 1971.

*Orr and Reno, Ronald L. Snow* and *Leo B. Lind, Jr.* (*Mr. Snow* orally), for the plaintiffs.

*Mussman and Shepatin* (*Mr. Mack M. Mussman* orally) for the defendants.

GRIFFITH, J. These cases are an action for divorce and two bills in equity to set aside as a fraudulent conveyance a transfer of certain assets of the defendant. The cases were tried together before *Johnson*, J., who made findings of fact and ruling of law and entered a decree in favor of the plaintiffs in all three cases. Defendants' exceptions to the findings of fact, rulings of law and decree of the court were reserved and transferred by the trial court.

The Stephensons were married April 24, 1964, and have two sons. They lived during their marriage on property owned by Ski-Pine Club, Inc., a corporation wholly owned by the defendant Edwin Stephenson. The property consisted of a nineteen room house and heated swimming pool located on 114 acres of land in Sugar Hill and Franconia.

The only occupation of the defendant since the marriage has been the occasional operation of the Ski-Pine Club, Inc., to furnish rooms and meals to skiers. The plaintiff assisted in these operations which the trial court found were at no time even remotely profitable. During the marriage the family expenditures of some eighteen thousand dollars a year were provided largely by gifts from the mother of the defendant.

On June 9, 1969 the plaintiff with the minor children left the defendant and brought the present action for divorce shortly thereafter alleging extreme cruelty and treatment such as seriously to injure her health. A report by a master on July 30, 1969, recommending temporary support of $100 per week was approved by *Loughlin*, J. A motion to modify the support order was denied by *Grant, J.,* September 26, 1969. Defendant has never complied with this order but has paid $25 per week. Since the separation the plaintiff has lived in a house provided by her mother from whom she has received substantial monetary aid. Plaintiff left the family home with one of the family's two cars but this was retaken by the defendant and plaintiff claimed the cost of rental of a car up to the time of the final decree.

Counsel for the plaintiff had secured in January 1970 a court order permitting appraisal of the Sugar Hill property. In March of 1970 he telephoned defendant's counsel to arrange to have an appraiser visit the property. Defendant's counsel informed him that the property no longer belonged to the Ski-Pine Club, Inc. but had been transferred to a new corporation called Sugar Hill Manors, Inc. Plaintiff's counsel then learned that on March 2, 1970 defendant's counsel Mack Mussman had organized Sugar Hill Manors, Inc. with an authorized capital stock of 300 shares and an authorized issue of 226 shares. The incorporation papers filed showed that 75 shares were issued to Ski-Pine Club, Inc. for its transfer of the Sugar Hill property and 151 shares to Mack Mussman for $1000. The officers and directors of the new corporation were Mack Mussman, his law partner and Helen V. MacDonald. Plaintiff then instituted the two actions in equity on behalf of herself and her two children alleging the transfer to the new corporation was in fraud of her and her children's interests.

Defendant first objects that from the evidence the trial court could not find that the plaintiff had established a cause for divorce. The trial court granted the divorce on the grounds of extreme cruelty and treatment such as seriously to injure the health of the libelant. This presents the limited question of whether there

was evidence to support the court's decree. *Szulc* v. *Szulc*, 96 N.H. 190, 72 A.2d 500 ( 1950 ); *Buck* v. *Buck*, 97 N.H. 178, 83 A.2d 922 ( 1951 ); *Kuo* v. *Kuo*, 108 N.H. 460, 237 A.2d 690 ( 1968 ). In contesting the granting of the divorce on the grounds of extreme cruelty the defendant relies on the fact that the evidence established only one assault by the defendant on the plaintiff. This, according to the plaintiff, was a blow with the back of defendant's fist which left her with a bruised jaw and three chipped teeth. In addition plaintiff testified that defendant drank excessively, had an obsession with firearms when drunk, terrifying plaintiff and her children, had a series of automobile accidents when drinking resulting in injury to the plaintiff, accused her of infidelity, threatened to disinherit her and the children and threatened and did on one occasion bar her from the home.

The above evidence was sufficient to support the decree for divorce. Acts of violence need not be many in number to authorize a divorce on this ground since it is granted " to relieve the complaining party from apprehended danger. " *Tibbetts* v. *Tibbetts*, 109 N.H. 239, 240, 248 A.2d 75, 76 ( 1968 ). The testimony of the plaintiff of the emotional stress of the marital discord was supported by her physician who testified that such stress would be sufficient to cause the injury to her health that he found. The evidence supported the trial court's granting of the divorce on the additional ground of treatment so as to seriously injure the health of the libelant. *Kotarba* v. *Kotarba*, 97 N.H. 252, 85 A.2d 377 ( 1952 ).

Defendant has not briefed any objections to the decree of the trial court setting aside the conveyance of the Sugar Hill property from Ski-Pine Club, Inc. to Sugar Hill Manors, Inc., but counsel asserted in oral argument that this decree was not supported by the evidence.

Attorney Mussman testified that the transfer of the Sugar Hill property to Sugar Hill Manor Corporation was the first step in a plan he had devised to develop the property and to provide defendant with employment. He testified that it was proposed to renovate the building for use as a clubhouse and to sell the remainder of the property as house lots. A plan showing the proposed development with 131 prospective lots was presented in evidence by Attorney Mussman. He stated that he intended to invest $100,000 and had secured other investors who would make available an additional $200,000. Attorney Mussman testified at the hearing on the preliminary injunction that it was proposed to

hire the defendant as manager at $10,000 to $15,000 salary per year. This was modified to $7,500 plus room and board at the hearing on the merits and the records of a corporate meeting held by the directors of Sugar Hill Manors, Inc., following the temporary injunction, show employment of the defendant for one year was voted at a mutually agreed upon salary.

Attorney Mussman stated that for tax purposes the investors of the $300,000 including himself would advance these sums by way of loans at 7 1/2 per cent to the corporation and that the total cash investment in the corporation would be $3,000 for three-fourths of the stock leaving one-fourth to the defendant. The plan envisioned an eventual board of directors made up of Mack Mussman and the other cash investors, excluding the defendant. The defendant and Sidney Wolf, one of the potential investors, in substance testified that their understanding of the proposal agreed with that of Attorney Mussman.

The trial court found on the issue of fraudulent conveyance as follows: "At the time of the transfer of land to Sugar Hill Manors, Inc., there was no question but that the matter of a property settlement between the Stephensons would be a matter of controversy in the divorce proceeding.

"The Court finds that the purpose and intent of this transfer, under the circumstances, was to deprive Mrs. Stephenson of her right to have the Court make a meaningful property settlement. The Court finds it was clear to Mr. Stephenson that an award of stock ( a minority interest ) in Sugar Hill Manors, Inc. to Mrs. Stephenson would be a meaningless order, particularly in view of the looseness of the agreement with the investors, and hence the transfer was intended to defeat and defraud Mrs. Stephenson's rights. "

The testimony of Attorney Mussman alone clearly supported this finding. Attorney Mussman testified that transfer stamps indicating a value of $35,000 were attached to the deed from Ski-Pines, Inc., to Sugar Hill Manors, Inc. An expert for the defendant valued the property at $40,000 and an expert for the plaintiff valued it at $100,000. Defendant's wholly owned corporation thus transferred the Sugar Hill property in return for a one-third interest in a corporation whose only asset, except for $1000, was the property transferred and contemplated having only a one-fourth interest upon an additional $2000 being invested. Whatever value is accepted for the property the trial court's finding that the transaction was a scheme to deprive the plaintiff of a meaningful

property settlement was warranted by the evidence. An alternative finding could have been that this was a crafty scheme by counsel for his own enrichment at his client's expense. The plaintiff was a proper party to maintain the action to set aside a fraudulent conveyance by her husband (*Morrison* v. *Morrison*, 49 N.H. 69 (1869); Annot., 79 A.L.R. 421 (1932)) and the fact that the transfer was made by defendant's wholly owned corporation does not prevent its being set aside. See *N.H. &c. Beverage Ass'n* v. *Commission*, 100 N.H. 5, 7, 116 A.2d 885, 886 (1955); *Lund Company* v. *Rolfe*, 93 N.H. 280, 282-83, 41 A.2d 226, 227 (1945).

Defendant argues that the decree of the court providing for a division of the property, certain other payments by the defendant and the order for support and alimony were excessive and an abuse of discretion.

The court made the following orders: 1. That defendant either deliver cash or securities of a value of $75,000 or in the alternative cause Ski-Pine Club, Inc. to deed the Sugar Hill property to the plaintiff; 2. A list of articles needed for the present home of the plaintiff to be turned over by the defendant; 3. Found defendant in contempt for failure to pay the support order of $100 per week and ordered all arrearage paid within 15 days; 4. Found defendant's denial of the use of one of his two vehicles arbitrary and capricious, ordered him to deliver one to the plaintiff and to pay the amount of her car rental charges; 5. Ordered defendant to make support payments at the rate of $75 per week and alimony in the amount of $25 per week; 6. Ordered the defendant to pay the reasonable legal fees and costs owed by the plaintiff to her attorneys.

These orders must be viewed against the background of the litigation and evidence in the case. Direct and candid exchange of information by counsel in domestic actions is often of aid both to the court and the parties. See Annot., 1 A.L.R.3d 382, 391 (1965). In the present case the defendant disclosed nothing except on order of the court and then his disclosures were less than candid. At the request of the master at the temporary hearing his counsel gave a statement stating defendant's assets were $5,810 and his debts $144,450. By order of the court at the trial, defendant produced a statement of assets showing securities of $31,725 and the value of the assets of Ski-Pine Club, Inc. as $127,000. During the trial he agreed in cross-examination that his interest payments from bank deposits shown on his income tax

returns indicated he had bank deposits of $53,000. It follows that at the time of the trial he had admitted to assets of $211,725. Included in this figure was $100,000 as the value of the Sugar Hill property. He also testified at the trial that his debts were between $17,000 and $20,000. The trial court did not make a determination of the value of the Sugar Hill property and the decree obviously left it to the defendant to determine whether his expert's figure of $40,000 or the plaintiff's expert valuation of $100,000 was the correct one. If $100,000 was correct he could retain the property by paying $75,000, if $40,000 was correct he could satisfy the $75,000 order by transfer of the property. In the first instance the wife would receive slightly more than one-third of his admitted assets and in the second case slightly less. We cannot say under all the circumstances of this case that the division of property including the delivery of one passenger car and certain articles required by the plaintiff and her children in their new home was an abuse of discretion.

The trial court was confronted by a defendant who had originally stated his net worth was minus nearly one hundred and forty thousand dollars, had attempted by fraudulent transfer to divest himself of a major portion of his assets, had admitted in testimony that his failure to pay the support order of the court was not because of inability to pay and had finally admitted to a net worth of some $200,000. While the plaintiff was possessed of some assets and like the defendant had a generous mother, it is not suggested that the order was not in accordance with her needs. We have recently rejected a formula approach to either division of property or support orders in domestic relation cases ( *Comer* v. *Comer*, 110 N.H. 505, 272 A.2d 586 ( 1970 )) and in the present case weighing all the factors which might properly be considered by the court the property division was within his discretion and power. *Kibbee* v. *Kibbee*, 99 N.H. 215, 108 A.2d 46 ( 1954 ); *Guggenheimer* v. *Guggenheimer*, 99 N.H. 399, 112 A.2d 61 ( 1955 ).

The trial court found that the defendant's refusal to allow the plaintiff the use of one of their automobiles was arbitrary and capricious. The defendant's surreptitious recapture by motorcycle of the vehicle she had and his refusal to return it warranted this finding and the order requiring him to reimburse her for the expenses of car rental. Defendant testified that he had funds to pay the original support order of $100 per week and was properly found in contempt for failure to do so.

For all practical purposes the defendant in this case has been unemployed since 1959 when he last had a salaried position. However, it is not contended that the order of $75 per week for the support of the children and $25 per week alimony for the wife was in excess of their requirements but that it is beyond the defendant's ability to pay. The trial court here found that the defendant was "an intelligent, articulate, attractive appearing individual with a first class education." This furnished a basis for finding that he had an earning capacity, and coupled with evidence of his other sources of income justified the support order made by the trial court.

The defendant objects to the order that the defendant pay the reasonable attorney's fees and costs of the plaintiff. Insofar as this order relates to the reasonable attorney's fees and costs incurred in the divorce action it was clearly within the discretion of the trial court. *Kuo* v. *Kuo*, 108 N.H. 460, 237 A.2d 690 ( 1968 ). Ordinarily since the expenses of the plaintiff in the equity actions arose out of the divorce action they would be properly included in the attorney's fees and costs chargeable to the defendant. However, if the trial court in determining the allowance of reasonable attorney's fees and costs to be charged to the defendant should find that the fraudulent transfer was made in good faith by the defendant upon unwarranted advice from his attorney, counsel fees in the equity cases should not be charged to him. Since counsel for the defendant is a defendant himself in the equity actions the expenses of the plaintiff in the plaintiff's equity cases might be assessed against him either as defendant or as counsel under the rule laid down in *Barber* v. *Company*, 80 N.H. 507, 511, 120 A. 80, 83 ( 1923 ); *Hines* v. *Donovan*, 101 N.H. 239, 139 A.2d 884 ( 1958 ).

The matter of the conduct of Attorney Mussman in this case is one properly for consideration of the Committee on Professional Conduct of the bar association in the first instance. *See In re Honig*, 10 N.J. 74, 89 A.2d 411 ( 1952 ).

*Remanded.*

All concurred.