Merrimack
No. 78-157

SPAULDING & FROST COMPANY, INC.

v.

THE STATE OF NEW HAMPSHIRE

DEPARTMENT OF EMPLOYMENT SECURITY,

BENJAMIN C. ADAMS, COMMISSIONER

February 14, 1979

*Sheehan, Phinney, Bass & Green P.A.*, of Manchester (*Dorothy M. Bickford* orally), for the plaintiff.

*Edward F. Smith*, of Concord (*Paul V. Kenneally* orally), for the defendants.

BROCK, J.    The question of law transferred to us upon an agreed statement of facts without ruling by the Merrimack County Superior Court (*Keller*, C.J.) is whether the department of employment security in determining plaintiff's unemployment tax assessment rate under RSA ch. 282 has the authority pursuant to RSA 282:6 F to refuse to credit an employer with contributions to the unemployment fund that are paid after the quarterly filing deadline but prior to the close of the computation year. We hold that it does not.

The plaintiff, Spaulding and Frost Company, Inc., is a New Hampshire corporation with its principal place of business in Fremont. Prior to December 1973, with less than $600 in benefits charged against its account, the company had an extremely favorable unemployment tax assessment under RSA 282:6, of 1.625%. On December 6, 1973, the company experienced a major fire that substantially destroyed its principal production facilities. As a result, much of the company's work force was unemployed for approximately six months, and drew unemployment benefits totalling some $38,000 during 1974. Effective July 1, 1975, the department increased the company's tax rate to 3.5%, having considered the increased benefits paid during the preceding year and a portion of taxes paid by the company in previous years. The company disputes the methodology employed by the department in computing its tax rate, alleging that it is erroneous as a matter of law.

Specifically, the company claims that it is entitled to credit for purposes of the tax rate computation for payments totalling $27,315.73, the actual amount it has remitted to the unemployment fund since 1969. The department, on the other hand, has given credit only for payments that it deems to have been "timely paid," which total only $14,596.30. The company requested the department to reconsider its computation and take into consideration the remaining $12,719.43.

The request was denied and the company then filed an appeal pursuant to RSA 282:6 F. Upon hearing, the administrative hearing committee issued its decision, which was approved by the commissioner, denying the appeal. The plaintiff then commenced this action in Merrimack County Superior Court, pursuant to RSA 282:6 F(4).

The record reveals that the plaintiff had an established pattern of late payments of its unemployment tax, for a number of years. For 1972 and 1973, approximately one-half of its quarterly tax payments were made after the filing deadline. Several of these late payments were received by the department within one week after the due date. One such late payment involved a dispute over the amount due. In another case, the department worked with the company to negotiate a feasible payment schedule. In all cases of late payment, the company was assessed and paid interest and a late filing penalty. At no time, however, was the company more than one quarterly payment in arrears and the company's total tax liabilities for each calendar year were paid in full by January 31 of the succeeding year. Throughout this course of events the company was on notice that late filing would subject it to penalties and interest. Not until October 27, 1975, however, did the department ever warn or give notice to the company that, in addition to these penalties, late filing would have a "further adverse effect on your merit rate, since as I am sure you are aware payments not made timely will not be credited to your separate account."

For purposes of computing the tax rate to be assessed for each employer, RSA 282:6 D(8) directs the commissioner to use "the total of all contributions paid on an employer's own behalf and credited as of the computation date to his separate account for all past years." The department's position is that RSA 282:6 C(1), which states in part that "[t]he commissioner shall maintain a separate account for each employer and shall credit his account with all contributions timely paid by him or on his behalf . . . ," compels it to exclude from the account to be "credited" to the plaintiff all quarterly payments which are late but are nevertheless paid on or before January 31 of the succeeding year. Under the authority granted by RSA 282:6 A, the department has established a payment schedule whereby the amount due for each calendar quarter must be paid and a report filed by the end of the month following the end of that quarter. The department takes the position that any payments received after a specified quarterly payment date are not "timely paid" under RSA 282:6 C(1) and thus, as a matter of law, cannot be credited to the employer's account, at least for purposes of tax rate computation. It would follow under this approach that an employer who at some time in the past paid its quarterly tax a

day late would be treated identically with one who has never paid it at all. Such an interpretation of the law flies in the face not only of common sense but also of the express language of the statute.

In adopting a "merit rating" plan for employers, the legislature clearly intended that the merit rating reflect employers' "actual experience in the payment of contributions on their own behalf and with respect to benefits charged against their accounts." RSA 282:6 D(1); *C. A. Lund & Co. v. Rolfe*, 93 N.H. 280, 281, 41 A.2d 226, 227 (1945). The plan is designed to weigh the amount of the tax paid by an employer over the years against the benefits which have been paid to its employees. RSA 282:6 D(7) does provide that:

> [N]o employer shall be entitled to a reduced merit rate under this section for any fiscal year . . . unless, as of the computation date preceding said fiscal year, he has properly and duly submitted reports and contributions required and due under the provisions of this chapter.

In other words an employer who is in arrears at the time the rate is being computed cannot take advantage of the merit-rating system. "Computation date" is expressly defined as January 31. RSA 282:6 D(8). We read these sections as stating that an employer who is *not* in arrears as of January 31 *is* entitled to a reduced merit rate for the following fiscal year. Subsection (7) further provides that an employer who is in arrears as of the computation date can, by paying the arrears in full before the beginning of the fiscal year (July 1), obtain "reinstatement of the rate to which he would have been entitled" for the last three quarters of the fiscal year in question. RSA 282:6 D(7). These sections show a clear legislative intent that an employer who "makes good" on arrearages shall not continue to be denied the benefits of a favorable merit rating. Under the department's scheme, in contrast, an employer who is late on any payment is forever penalized by having that payment not credited to his account at all. "Such a reading would do violence to the relationship of employer contributions to employee benefits contemplated by the statutes." *Foster v. State*, 117 N.H. 16, 21, 370 A.2d 257, 261 (1977). The quarterly payment schedule was established by administrative regulation, not statute, and we have no basis for presuming that the legislature had such a schedule in mind when it spoke of "timely" payment. *Accord, Hamby v. Adams*, 117 N.H. 606, 610, 376 A.2d 519, 522 (1977).

The issue in this case is not, as suggested by the department, whether the department has the discretion to credit these amounts on an arbitrary and sporadic basis when a particular employer shows

itself worthy of special treatment. Our decision here applies to all employers equally.

■ We hold that under the statute the department in computing the tax rate for each employer must take into account all contributions paid on an employer's behalf up to and including the computation date, January 31, regardless whether those payments were made according to the department's administrative schedule. In the case before us, the company is entitled to credit for the full amount of its contributions, $27,315.73. Its assessment rate for the fiscal year beginning July 1, 1975, and for all succeeding years must be recomputed using this figure.

*Remanded.*

All concurred.