Hillsborough, }
Jan. 2, 1923. }

## MARY BARBER v. GEORGE R. JONES SHOE COMPANY.

Any attempted fraud upon a court is a contempt and punishable as such; false or fraudulent conduct of counsel in attempting to repudiate their acts and oral agreements made at a former trial constitutes a contempt.

The ordering of compensatory costs to the injured party as a part of the judgment in proceedings for contempt is a common-law power of the court and such costs may be ordered against an attorney so offending.

If, after exceptions are ordered to be filed by a specified date, counsel waive all exceptions, their objections made thereafter do not entitle them to the allowance of a bill of exceptions.

CASE, for negligence, brought by the mother of Daniel E. Barber to recover her loss by the accident to him described in *Barber* v. *Company*, 79 N. H. 311. The defendant filed the following plea and motion to dismiss.

"And the defendant makes the further brief statement of defense and says that said Mary Barber is the mother of Daniel E. Barber and as the mother and next friend of said Daniel E. Barber has previously brought an action against said defendant and at the time of the trial of said action said Mary Barber by her attorney, the said James E. Banigan, agreed with the attorney for the defendant that all questions of damages, including medical and hospital expenses and loss of service and wages, should be adjudicated in that one action, and pursuant to said agreement of counsel the court in the action of Daniel E. Barber by his mother and next friend, *Mary Barber* v. *George R. Jones Company*, instructed the jury in part as follows:

'The plaintiff is entitled to recover of the defendant full com-

pensation for all the loss or damage suffered by herself or her son by reason of the wrongful acts of this defendant.

The plaintiff and her son in this case by agreement of the parties may be considered as one; so perhaps I may refer to the damages of both the mother and the son as being the damages of the plaintiff . . .

By virtue of an agreement between the parties here, only one action can be brought on account of the injuries which this young man received and those his mother received by reason of loss of wages. This is the only action which can be brought and whatever is recovered, if anything is recovered, must be recovered in this action.'

And thereafter under said charge the plaintiff did recover judgment and said judgment has been fully satisfied by the defendant; that at the time of the satisfaction of said judgment said plaintiff's attorney recognized and acted upon said agreement. Wherefore, defendant prays judgment and its costs."

There was a hearing December 2, 1921. The court found for the defendant, granted the motion and entered judgment in accordance with the prayer. To the granting of the motion counsel for plaintiff excepted. The court requested a bill of exceptions by December 5, 1921; and, after conference, counsel stated that the plaintiff did not care to except, but would submit to the ruling of the court. December 28, 1921, plaintiff moved "that the verdict be set aside because it is against the law and because the procedure was improper and a new trial granted." The court declined to entertain this motion because all exceptions were waived at the time defendant's motion to dismiss the action was heard and granted.

March 8, 1922, the plaintiff filed the following as a bill of exceptions: "1. The plaintiff excepts to the entry of judgment by the court against the plaintiff in the hearing upon a motion to dismiss. 2. The plaintiff excepts to the denial of her motion to set aside the verdict."

The defendant moved for compensatory costs. The motion was denied upon the ground that as matter of law the court had no power to grant it, and the defendant excepted. Other facts are stated in the opinion. Transferred from the September term, 1921, of the superior court by *Marble*, J.

*Banigan & Banigan* (*Mr. Edward W. Banigan* orally), for the plaintiff.

*Tuttle, Wyman & Starr* (*Mr. Wyman* orally), for the defendant.

PEASLEE, J.   Upon the case presented, the plaintiff takes nothing by her alleged bill of exceptions.   After the defendant's motion to dismiss the action and for judgment had been granted, and the plaintiff had claimed an exception, the court ordered a bill of exceptions to be filed by December 5, 1921.   Thereupon plaintiff's counsel stated that they did not care to except, but would submit to the ruling of the court.   December 28, 1921, the plaintiff filed a motion to set the verdict aside as against the law and because the procedure was improper, and for a new trial.   The motion was denied because all exceptions were waived at the time the defendant's motion was heard and granted.   March 8, 1922, the plaintiff filed, as a bill of exceptions, a claim of an exception to the order of dismissal and to the denial of "her motion to set aside the verdict."   This bill of exceptions was not allowed by the court.   The case was transferred upon a recital of the foregoing facts.

It thus appears not only that the exceptions now claimed were in terms waived by the plaintiff, but also that the original objections were not seasonably made.   *Cook* v. *Sargent*, 78 N. H. 25, and cases cited.   The question whether a so-called bill of exceptions which has not been allowed by the court can present anything for determination here has not been considered.

The defendant moved for compensatory costs.   Subject to exception, the motion was denied upon the ground that the court had no power to make such order.

It appears from the record here that in the original suit of Daniel E. Barber against this defendant one of the counsel for the plaintiff made an agreement in open court, during the progress of the trial, that the damages of the present plaintiff should be assessed in that action in favor of her son.   That suit was originally brought in the son's name by his mother, as next friend.   Before the trial he became of age, and apparently continued the action in his own name.   In the course of the trial objection was made to the proof of a doctor's bill as an element of the son's damage, the objection being coupled with a statement that the defendant did not object to the mother being joined as a plaintiff.   Thereupon, at the suggestion of the presiding justice, the plaintiff moved to join the mother as a party. The motion was granted, the presiding justice directing that the motion be put in writing and remarking that the case "is now in its original form, so to speak."   The evidence was then received and in charging the jury the court said: "The plaintiff is entitled to recover of the defendant full compensation for all the loss or

damage suffered by herself or her son by reason of the wrongful acts of this defendant. The plaintiff and her son in this case, by agreement of the parties, may be considered as one; so perhaps I may refer to the damages of both the mother and the son as being the damages of the plaintiff. . . . if you come to the question of damages you will consider as one all the elements of damage whether of the mother or the son. . . . By virtue of an agreement between the parties here, only one action can be brought on account of the injuries which this young man received and those his mother received by reason of loss of wages. This is the only action which can be brought, and whatever is recovered, if anything is recovered, must be recovered in this action."

It seems incredible that any intelligent person could mistake the meaning of the agreement, motion and order above referred to, or the thought sought to be conveyed by the charge. It is too plain for argument that the present plaintiff agreed to have her damages assessed in that suit, that she asked and obtained leave to become a party and that her counsel sat by and heard the jury charged to that effect, and made no suggestion that the agreement had been misunderstood or that it was being misapplied.

Counsel now claim that they understood the agreement to be merely for the inclusion of doctors' bills in the first suit, and that the remark of the court that the case was "now in its original form, so to speak," shows that the mother was not made a party in interest. The remark of the court was not strictly accurate, if taken without the qualifying words "so to speak." The addition of those words shows that the presiding justice understood that the description was not technically correct. The remark was a casual one, and not a ruling or order. No reasonable person could have misunderstood it. The whole discussion had been with reference to making the mother a party so that her damages could be assessed. Merely adding her name as next friend would have no such effect. And whatever plaintiff's counsel then understood, it is beyond question that he thereafter took advantage of an interpretation of the agreement and order which he now seeks to repudiate.

In this situation it was the duty of counsel to inform the present plaintiff that her damages had been paid and that she could not maintain the present suit. Instead of pursuing that course, they have advised and brought this suit and seek to repudiate their agreement. It does not appear whether this has been done with actual knowledge of the professional misconduct involved in their

action, or whether it is the result of ignorance or lack of moral perception. If this were a proceeding for their disbarment, it might be of no consequence which of these causes induced their conduct. "That the offences were not all willful does not much help the matter. The question is one of protecting the public. The danger may be greater from one incapable of caring for funds or affairs entrusted to him, than from one who, though capable, has on a single occasion failed to live up to the standards set for members of the legal profession. The petty thief is imprisoned for a few months. The kleptomaniac is kept in confinement all his days. There is no idea of punishment in the restraint of the kleptomaniac; neither is there in the case of the removal of an attorney from his office. Each is a step necessary for the protection of society." *Hobbs' Case*, 75 N. H. 285, 287; *Delano's Case*, 58 N. H. 5.

The facts inducing the conduct of counsel not having been found, and the defendant's motion for compensatory costs having been denied, as matter of law, the question presented by the exception is whether such costs could be imposed upon any set of facts that could be found from the evidence. That counsel deliberately sought to repudiate their agreement made during a trial, and brought this suit maliciously and without probable cause, could be found. But upon the record the order asked for here is not against the attorneys. Relief against them (for this defendant) must be sought in a suit for malicious prosecution or in proceedings for contempt. If the public ought to be protected from them in the future, the procedure is for the attorney-general to file a complaint seeking their disbarment. The present question concerns the defendant's rights against the plaintiff. So far as appears, there is no evidence that she has not proceeded in good faith, relying upon unwarranted advice from the attorneys.

"Most courts hold that their jurisdiction in respect to the allowance of costs is statutory (11 Cyc. 24), and that is the view that obtains here. *State* v. *Kinne*, 41 N. H. 238; *Smith* v. *Boynton*, 44 N. H. 529; *Moses* v. *Craig*, 77 N. H. 586. While the statutes authorize the court to allow costs to the prevailing party (P. S., c. 229, s. 1), they limit the amount it may allow as counsel fees to one dollar. There is no statute which in terms or by implication authorizes the court to allow more than that sum when it finds that would be equitable." *Jacques* v. *Company*, 78 N. H. 248, 250. Cases like *Moses* v. *Craig, supra*, and *Watkins* v. *Railroad, ante*, 102, are not in point here. Those cases relate to the imposition of terms

upon a prevailing party as incident to the relief granted to him, and not to costs taxed against the loser.

It is suggested that as the parties are now before the court and the defendant makes a claim against the plaintiff growing out of this litigation, the best inventible procedure requires that the matter be disposed of here. But the rule that the best procedure shall be adopted has never been extended so as to abrogate settled rules which govern substantive rights. One of these rules is that no suit can be maintained until a cause of action has accrued. *Ackerman* v. *Middleby*, 75 N. H. 576. The same rule applies to items of set-off and recoupment. The defendant's right must have existed when the plaintiff's suit was commenced. *Hall* v. *Paris*, 59 N. H. 71, 73, and cases cited.

Upon the record as presented, the ruling that compensatory costs could not be allowed as against the plaintiff was correct. But another phase of the situation has been presented in argument. The motion for such costs, as stated in the record, is a general one, and does not appear to have included a request for an order against the attorneys for the plaintiff. The defendant has argued its case upon the hypothesis that it will make such request. The motion is not reported *verbatim*, and as it may include this question, or can be made to hereafter, the matter has been considered. The defendant bases its claim in this respect upon the power of the court to punish for contempt. It is understood that this claim is urged against counsel only, and it is so considered.

Any attempted fraud upon a court is a contempt, and may be punished as such. "The due administration of justice requires that statements to the court by attorneys and its other officers shall be such that the court may rely upon their truthfulness with absolute confidence." *Goodhart* v. *State*, 84 Conn. 60, 62. It may be conceded that it is not a contempt for counsel to contend that a prior order or judgment does not have a certain effect, although the fact is plainly otherwise. The present case goes far beyond that. It could be (and apparently has been) found that the offense of counsel here lies in their attempt to deny their agreement made in open court and to falsify the record they were ordered to make, but did not make. At the trial of the first suit counsel moved that the mother be joined as plaintiff. The motion was granted and they were ordered to put the motion in writing, as a part of the pleadings in the case. This they did not do. The result was that the record of the case, as distinguished from what is known as the record of the

trial, was left in an incomplete state. Upon the record which was the foundation for the judgment, the mother was not a party. This result came about by the failure of counsel to obey the direction of the court to file in writing the motion he had already granted orally. Thus far the situation does not differ materially from that which occasionally arises. Because our practice is simple, counsel sometimes overlook the need to make the record perfect. There is a great difference between a simple record of essential things and no record at all. The need for a record of oral agreements and proceedings in court is not often manifest, because of the uniformly honorable conduct of the bar. Stipulations are lived up to and agreements are kept, whether made matters of formal record or not.

It may be that it is the duty of the court to see that all matters essential to a perfect record are put in proper form. But whether this be so or not, it is plainly the duty of the bar to comply with directions of the court in that respect, and to make good all informal action relied upon by the court and opposing counsel. There is evidence that in this case counsel failed to live up to these requirements. Had they filed the document ordered by the presiding justice, there would have been no possible ground for a pretence that the present suit could be maintained. Had they stood by their oral motion and agreement, which resulted in the payment of the mother's damages in the first suit, they could not have reasonably brought another suit in her behalf. But they did neither. They failed to file the written motion, and denied that they made the oral motion or entered into the oral agreement which it has now been found they did make.

As before stated, their offense is not that they contend for a certain construction of an agreement or of proceedings taken, but that they attempt to deny their acts and agreements at the former trial. All the transactions are parts of proceedings before the court, and all relate to the substance of the action. It requires no argument to demonstrate that any false or fraudulent conduct in relation thereto would constitute a contempt. *Goodhart* v. *State, supra;* s. c. Ann. Cases, 1912 B, 1297. The cases are collected and reviewed in the note at page 1310.

"We entertain no doubt, that an attorney may be ordered to perform a contract made by him in court, in relation to an action, and that the performance of the order may be enforced by an attachment." *Fernald* v. *Ladd,* 4 N. H. 370; *Blain* v. *Patterson,* 47 N. H. 523, 527. While it is also said that such proceeding will

not be taken except in a clear case and that the court would not be disposed to take it on a mere oral agreement (*Fernald* v. *Ladd, supra; Vaughan* v. *Morrison,* 55 N. H. 580), yet the existence of the power to act is clearly recognized. The statement as to oral agreements is a mere counsel of caution. The case should be clearly made out. In a case like the present, where the agreement is shown by a stenographer's record, where action upon it was taken in open court and where the court ordered the counsel to make it a matter of formal record, the reasons for declining to act upon it are wanting. The law is not so impotent that oral deceit can be practiced with impunity, nor is such wrong of a preferred class so that the aggrieved party must be put to his independent suit to recover what could be obtained immediately if the deceit had been by writing.

The question whether counsel were actuated by any fraudulent purpose in failing to file the written motion, in sitting by and taking the benefits of a construction of the oral agreement which they intended to thereafter repudiate, or in the repudiation now undertaken, has not been passed upon. If such fraudulent purpose is hereafter found to have existed, in any of these respects, the charge of contempt will be established.

Counsel argue that they have acted in good faith throughout the transaction. Incredible as this assertion seems, it may hereafter appear that they are so lacking in knowledge of the law or in moral perception, that their allegation is true. If it should be so found, the question would arise whether the finding would be an answer to the charge of contempt. The proceeding is not criminal, and the existence of a criminal intent need not be proved. *State* v. *Howell,* 80 Conn. 668. "Although the intent with which the person acted may affect the amount of his punishment, he cannot justify his conduct by showing that he . . . knew no better." *Telegram Newspaper Co.* v. *Commonwealth,* 172 Mass. 294, 300. "The natural consequences of his act being to corrupt the administration of the law, the defendant cannot discharge himself by alleging that he meant no harm, and did not suppose that he was doing anything illegal." *Sturoc's Case,* 48 N. H. 428, 432; *Wilcox &c. Co.* v. *Schimmel,* 59 Mich. 524. The conduct complained of tends to frustrate the ends of justice regardless of the motive which may have induced the improper action. The rule that lack of knowledge that the conduct was improper should be considered upon the issue of the extent of the punishment seems sufficiently favorable to one who is

guilty of such a violation of duty. Such is the rule in this state. *State* v. *Collins,* 62 N. H. 694; *Sturoc's Case, supra.*

The only question remaining is whether it is within the power of the court to order the offending attorneys to pay to the defendant the compensatory costs moved for. The practice of ordering compensation to the injured party as a part of the judgment in proceedings for contempt is sometimes stated to rest wholly upon statutes. 13 C. J. 89, and cases cited. If this were the rule here, the costs moved for could not be allowed.

The cases declaring that there is no such power are nearly all in jurisdictions where there is a statute governing the subject, and the question of common-law power is not involved. They contain no discussion of the matter, and merely state the proposition. Of this class are *Chapel* v. *Hull,* 60 Mich. 167; *State* v. *Lonsdale,* 48 Wis. 348, and *State* v. *Company,* 55 Wash. 1. In a few states where there is no statute the existence of the power is denied. *O'Rourke* v. *Cleveland,* 49 N. J. Eq. 577; *Morris* v. *Whitehead,* 65 N. C. 637. On the other hand, the power is upheld in some jurisdictions. *Lorick* v. *Motley,* 69 S. C. 567; *Daniel* v. *Capers,* 4 McCord 237; *Stimpson* v. *Putnam,* 41 Vt. 238; *Wells Fargo & Co.* v. *Company,* 19 Fed. Rep. 20; *In re North Bloomfield &c. Co.,* 27 Fed. Rep. 795. In others where there is a statute, the existence of the common-law power is recognized. *Galland* v. *Galland,* 44 Cal. 475, 478; *Levan* v. *Richards,* 4 Ida. 667. The question was raised in *Campbell* v. *Justices,* 187 Mass. 509, where some of the authorities are collected. It was not decided, but the court apparently considered that it was not settled by the American decisions.

In none of the cases is there any examination of the English practice. While the cases there contain some discussion of the question how far the court will go in the matter, this seems to have always been treated as a question of policy rather than one of power. The practice of making an order for compensation other than ordinary taxable costs to the party injured by a contempt is of early origin.

"If the contempt be confessed or proved, it shall be referred to the master to tax the costs of the prosecutor; and the party offending shall be committed till he pays them, and give satisfaction to the court for the misdemeanor. Rules and Orders in the Exchequer 16, Rule 40." 2 Comyn's Dig. 221, Title Chancery. Costs as used in the English chancery practice mean costs as taxed between attorney and client. Dan. Ch. Prac., *c.* XVIII.

Special care seems to have been taken that offending attorneys make reparation to the party offended against. As to such an officer "The court will award an attachment against him for male and fraudulent practice. . . . And he shall pay costs thereupon. . . . Or shall be committed." 1 Comyn's Dig. 631, citing "Styles's Practical Register 2."

"If an attorney draws deeds under fraudulent circumstances, he shall pay costs on their being set aside, tho' he pretends he only followed directions. *Bennet* v. *Vade,* T. 1742. 2 Atkyns 324." 2 Comyn's Dig. 428.

A solicitor filed a false and scandalous affidavit in a bankruptcy case. There was a motion that the affidavit be taken off the files and that the solicitor pay costs. The motion was granted and Lord *Eldon* directed that the solicitor "pay the costs, actually out of pocket." The formal order was that he "pay the costs of the application, and all the costs, out of pocket, to be taxed as between solicitor and client." *Ex parte Simpson,* 15 Ves. Jr. 476, 478.

Nor was such procedure confined to the equity side of the court. In 1790 proceedings for contempt were instituted in the common pleas against a sheriff for making an improper return. The defendant claimed that the correct proceeding was for an amercement to be paid into the exchequer, and there proceeded for by the complainant. This being overruled, he then said that the complainant ought to sue for a false return. "But the Court refused to consent to this, and ordered that the *sheriff should immediately, without further delay, pay the whole debt and costs due to the Plaintiff* Bond, *together with the costs of all the applications.* . . . With respect to the question of imprisonment, the Court said in general, there could be no doubt of their power to commit for a contempt." *Rex* v. *Baker,* 1 H. Bl. 543, 546. The efficacy of the procedure there adopted is shown by the closing paragraph of the reported case:

"Upon hearing this, the sheriff thought proper to comply with the terms prescribed, and accordingly soon after paid the whole debt and costs, and the costs of all the applications." *Ib.*

The same practice still prevails in that jurisdiction. "Solicitor and client costs of a motion for attachment or committal may be given to the party moving, by way of indemnity." 7 Hals. Laws of Eng. 318; *Plating Co.* v. *Farquharson,* 17 Ch. Div. 49, 57; *Littler* v. *Thomson,* 2 Beav. 129.

"An order for attachment cannot be made conditional on the happening of a future uncertain event, but it is common practice,

when attachment issues to enforce obedience to an order, to direct the writ to lie in the office for a specified time to enable the respondent to comply." 7 Hals. Laws of Eng. 317. This proceeding bears a close resemblance to the practice here in vogue of suspending sentence in a criminal case upon or during the performance of certain conditions by the defendant. *Sylvester* v. *State*, 65 N. H. 193; *Philpot* v. *State*, 65 N. H. 250; *State* v. *Drew*, 75 N. H. 402. It has also been applied here in proceedings for contempt. *State* v. *Buck*, 62 N. H. 670.

In the earliest reported case in this state upon the subject, compensation to the complainant beyond taxable costs was denied, upon the ground that there was here no statute like the one in New York, under which such relief could be granted. *Buffum's Case*, 13 N. H. 14, 17. The question is not discussed, and the authorities outside those in New York are not referred to. The fact that there was a statute in that state appears to have been treated as a sufficient demonstration that at common law there was no such remedy. The case has not been followed. In *Robinson* v. *Owen*, 46 N. H. 38, 39, it is said in relation to another feature of punishment for contempt, that "What is done in New York by express statute, we do here to a large extent under our common law discretionary power, regulated by our published rules, and a long established usage under them." In *State* v. *Collins, supra*, 694, the question reserved was whether the good faith of one proceeded against upon a complaint for contempt was an answer to the aggrieved party's claim to have his damages assessed in that proceeding. The decision that it should be considered "in mitigation of penalty" implies that an assessment was contemplated by the court.

In *State* v. *Buck, supra*, 670, the defendant was adjudged to be in contempt by the arrest of the complainants upon *mesne* process while they were in attendance as witnesses before a referee, and the order was that unless he discontinued the suit he should be fined. This case is an application of the English practice, and our own practice in criminal prosecutions, to proceedings for contempt.

The question of the power of the court to order an offending party to pay the expenses of his opponent was directly presented and decided affirmatively in *Manchester* v. *Hodge*, 75 N. H. 502. As stated in *Jacques* v. *Company, supra*, 248, 250, the case is based upon the proposition "that the court has power to enforce its decrees, or . . . to punish for contempt." The law upon the subject here

is in harmony with the common law of England, and it is within the power of the superior court to make the order asked for.

Some of the questions which have been dealt with are not formally presented by the record. But they have been considered in view of the facts that they have been argued, that they will arise in the course of the disposition of the case in the superior court, and that they involve the conduct of attorneys, which it is the duty of the court to supervise.

The superior court will dispose of the present motion, its amendments, and any additional motion the defendant may hereafter file, in accordance with the views expressed herein.

*Case discharged.*

All concurred.