Hillsborough
No. 86-166

INDIAN HEAD NATIONAL BANK

v.

GEORGE D. COREY & a.

December 31, 1986

*Sullivan, Gregg and Horton P.A.*, of Nashua (*James L. Sullivan, Jr.*, on the brief and orally), for the plaintiff.

*Berman, DeValerio & Pease*, of Boston, Massachusetts (*Norman Berman* and *Harry A. Garfield, II*, on the brief, and *Mr. Berman* orally), and *George D. Corey, pro se*, for the defendant George D. Corey.

SOUTER, J.   The plaintiff, Indian Head National Bank, appeals an order awarding counsel fees to the defendant George D. Corey based on the express finding of the Superior Court (*Goode*, J.) that the bank's delay in discharging its obligations under a consent decree was "arbitrary, capricious and [in] bad faith. . . ." The bank claims that the findings do not support an award of counsel fees, and that the evidence does not support the findings. We affirm, and further grant Mr. Corey interest of 12% on the trial court's award, together with his counsel fees and double his other costs incurred in this appeal.

Mr. Corey is a beneficiary under a trust of which the bank is a trustee. The bank began the proceeding now before us by filing a petition for instructions following a disagreement with Mr. Corey, the exact nature of which is not apparent in the record before us.

Both the disagreement and any uncertainty about the trustee's obligations supposedly ended with a consent decree entered on May 6, 1985, under the terms of which the bank was obligated to pay Mr. Corey's debts plus a lump sum directly to him, to provide funds and assistance for his purchase of a house, and thereafter to make distributions of net income to him, and to provide periodic reports of the trust's financial transactions.

The decree did not end the difficulties, however, and on the following June 14 Mr. Corey filed a motion to find the bank in contempt, claiming that the bank had failed to make any of the required payments, and seeking costs and attorney's fees in the renewed litigation. The bank answered that Mr. Corey had been hasty and asserted that "even as respondent was pursuing his motion for contempt, [the bank] was complying with the order . . . ." An informal hearing in chambers on July 19 appeared to resolve the matter once again.

Nonetheless, in November, 1985, Mr. Corey filed a further motion in which he claimed that the bank's delay in complying with the consent decree had injured him, and alleged that the bank still remained in default of its obligation to discharge his balance due to Master Card, a debt which continued to damage his credit rating. Based on these allegations, Mr. Corey again sought reimbursement for expenses and attorney's fees incurred in preparation for the hearing in chambers on July 19, and for the additional legal fees and costs resulting from the bank's continuing failure to honor the decree thereafter. The bank responded, in effect, that it had acted reasonably, and although the bank admitted that it had misapplied a payment to Master Card, it represented that to the "best of [its] knowledge the matter [had] been rectified."

In December, 1985, the court held a full hearing on the original motion for contempt and the later motion for fees, and enquired into the bank's efforts to comply with the consent decree. After presenting evidence that the bank still had not discharged the Master Card debt, as well as other evidence unfavorable to the bank, Mr. Corey's counsel told the court that he did not claim that the bank had intentionally disregarded the decree so much as that it had failed to attend to it. He expressed a preference for an award of fees and costs without a formal and express finding of contempt, since a contempt finding would only make it more difficult for Mr. Corey to deal with the bank in the future.

Without mentioning "contempt," the court found

"that the defendant-beneficiary George Corey, through counsel, was required to seek judicial intervention to

compel compliance with the terms of the consent decree entered on May 6, 1985.

The record discloses a number of instances where the plaintiffs' trust department has failed without just cause to discharge their obligation as corporate fiduciaries to the defendant. This litigation, unnecessarily protracted through the plaintiffs' arbitrary, capricious and bad faith conduct has required time and effort of defendant counsel to compel plaintiffs to do that which they should have done on their own."

The court accordingly awarded fees of $6,150.94, which we take to be reimbursement for counsel fees, all but $70.43 of which had apparently been incurred in connection with the original filing of the motion for contempt and preparation for the July hearing.

In this appeal the bank argues, first, that the award of counsel fees in a contempt proceeding is erroneous in the absence of an express finding of contempt. The short answer is that the long-standing rule authorizing a court to award reasonable attorney's fees to a litigant who is required to bring action to enforce a judicial decree, see *Guay v. Association*, 87 N.H. 216, 221, 177 A. 409, 413 (1935), does not require an express finding of contempt. Although such a finding will normally be the occasion for an award of fees on this basis, see *Barber v. Company*, 80 N.H. 507, 120 A. 80 (1923); *Fowler v. Owen*, 68 N.H. 270, 39 A. 329 (1895), this court apparently thought no such finding was necessary to support the award of counsel fees in *Manchester v. Hodge*, 75 N.H. 502, 77 A.2d 76 (1910). Rather, the essential justification for such an award is the gratuitous burden placed on the successful party who is forced to incur further legal expenses simply to obtain what a court has previously awarded or to enforce a right that a court has previously declared. On this basis alone, therefore, the trial court's finding entitled Mr. Corey to the award of reasonable fees.

The cases we have cited do not, however, exhaust the authority supporting the trial court's order. Superior Court Rule 59 authorizes the assessment of "reasonable costs, including reasonable counsel fees, against any party whose frivolous or unreasonable conduct makes necessary the filing of or hearing on any motion." In addition, *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977) and its companion case, *St. Germain v. Adams*, 117 N.H. 659, 377 A.2d 620 (1977), establish the more comprehensive rule that "where litigation is instituted or unnecessarily prolonged through a party's oppressive, vexatious, arbitrary, capricious or bad faith conduct, an award of attorneys' fees to his opponent is within the court's power."

*St. Germain v. Adams, supra* at 662, 377 A.2d at 623. *Harkeem* makes it clear, moreover, that for purposes of justifying a fee award "bad faith" is not limited to its narrow sense of an intentional disregard of duty or an intent to injure, *see Murphy v. Financial Development Corp.*, 126 N.H. 536, 542, 495 A.2d 1245, 1250 (1985), but may be said to exist whenever "an individual is forced to seek judicial assistance to secure a clearly defined and established right, which should have been freely enjoyed without such intervention . . . ." *Harkeem v. Adams, supra* at 691, 377 A.2d at 619.

Although the trial court's findings would, on their face, suffice to justify the award of fees under any one of the foregoing authorities, the bank raises two further related issues in an effort to obtain reversal. As a first step, it argues that all of the rules we have discussed were narrowed by *Funtown, U.S.A. v. Town of Conway*, 127 N.H. 312, 499 A.2d 1337 (1985), so that counsel fees may now be awarded only on a showing of bad faith in the strict sense of intent to injure. As its second step, the bank emphasizes that Mr. Corey's lawyer disclaimed any allegation that the bank had been motivated by such an intent to injure Mr. Corey, and it argues that the evidentiary record would not support an inference of such intent. Hence, it submits that the trial court's findings are unsupported by any evidence that would justify the award of fees.

The bank, however, is wrong on both points. The argument that *Funtown* narrowed the circumstances in which a trial court may exercise discretion to award fees rests on a single quotation from the opinion in that case: "[i]n *Harkeem* . . . we held that an exception to the general rule that parties pay their own counsel fees exists 'where an individual is forced to seek judicial assistance to secure a clearly defined right' if bad faith can be established." *Funtown, U.S.A. v. Town of Conway, supra* at 315, 499 A.2d at 1339 (citation omitted). The bank argues, in effect, that this statement narrows the *Harkeem-St. Germain* rule, along with both the prior law expressed in *Hodge* and the superior court rule, by requiring proof of bad faith in addition to proof that the prevailing party was required to enter court to obtain the benefit of a clearly defined and established right. That is, the bank argues that *Funtown* limits "bad faith," in this context, to an intent to disregard duty or to injure, and requires proof of such bad faith as a necessary condition for a fee award.

We will be frank to say that when the quotation is read in isolation from the remainder of the *Funtown* opinion it casts some plausibility on the bank's argument. But the quoted statement does not stand by itself, and a reading of the entire opinion reveals no

intent to retreat from the broader rules of *Harkeem-St. Germain, Hodge,* and Superior Court Rule 59.

It is in light of these rules, therefore, that we must judge the bank's final argument, that the evidentiary record is devoid of support for the court's findings that the bank acted arbitrarily, capriciously, and with bad faith. Not to waste time in needless discussion, we narrow the question to the sufficiency of the evidence to support a finding that judicial intervention was necessary to obtain the benefit of a clearly defined and established right, thus amounting to bad faith under *Harkeem.* A single example will indicate that the trial court had an adequate evidentiary basis to award fees on this basis.

We have already noted that one of the debts the bank was obligated to discharge under the terms of the consent decree was Mr. Corey's debt to a Master Card account. The bank was aware that there was such a debt at the time of the decree in May, 1985, and Mr. Corey's lawyer thereafter informed the bank several times that it remained unsatisfied. The record contains convincing evidence, nonetheless, that the bank had not paid the account by the time of the informal July hearing, and that despite counsel's requests, the account had not been fully discharged by the time of the December hearing, five months later. In the meantime, Mr. Corey was denied use of his Master Card and the Master Card records continued to reflect his bad debt.

As if this were not bad enough, the bank was the creditor on Mr. Corey's Master Card account, as well as Mr. Corey's trustee. For seven months, then, the bank's Master Card department and its trust department could not communicate effectively enough to pay off a simple debt. In order to explain to the bank's right hand what it should have paid its left hand under the terms of a seven-month-old consent decree to which the bank was a party, it took a petition for contempt, a petition for counsel fees, one chambers conference and one full evidentiary hearing held before a justice of the superior court.

■ It would be superfluous to say more. We will not see many more such obvious examples of a need to pursue litigation to enforce a clearly defined and established right. The rule in *Harkeem* is therefore satisfied, as are Superior Court Rule 59 and the rule in *Hodge,* for that matter. Indeed, the trial court could have awarded an even greater amount in order to provide full reimbursement for fees incurred for the December hearing.

■ A final matter for our consideration is Mr. Corey's request for counsel fees, enhanced interest and the costs of this appeal. In

order to preserve the effective benefit of the award of fees that he obtained below, Mr. Corey has requested a discretionary order under Supreme Court Rule 23, awarding him attorney's fees for this appeal on the ground that the appeal was frivolous or taken in bad faith. We believe that the trial court's award of counsel fees was so clearly within its discretion, and that the bank's position was so thoroughly devoid of any equity, that the appeal was frivolous and an act of bad faith in the sense used in *Harkeem*. We therefore grant the request for reasonable fees, which shall be taxed by the clerk upon presentation of a statement by Mr. Corey's counsel. On like reasoning, we agree that RSA 490:14-a is applicable and award Mr. Corey double the amount of his other costs incurred since entry of the appeal, together with interest of twelve percent on the superior court's counsel fee award, to be taxed in like manner.

*Affirmed.*

JOHNSON, J., did not sit; the others concurred.