Grafton
No. 86-465

## Paul Keenan

v.

## Wayne Fearon

June 6, 1988

*Bruckner Professional Corporation,* of Woodsville, for the plaintiff, and *Gregory M. Sorg,* as plaintiff's counsel, orally *pro se.*

*Stebbins, Bradley, Wood & Harvey P.A.,* of Hanover (*Nicholas D. N. Harvey, Jr.,* orally), for the defendant.

SOUTER, J. We ordered the appeal in this case dismissed upon disclosure that the named plaintiff had not authorized his trial counsel to file it, and by order dated December 18, 1987, we awarded fees and expenses to be paid personally by plaintiff's counsel. We now deny his motion for reconsideration and order him additionally to reimburse the defendant for his attorney's fees incurred in responding to the further proceedings relating to fees.

The case began in July, 1986, with a petition to enjoin the defendant's construction of a garage on property contiguous to the plaintiff's land in Monroe. Several of the parties' neighbors contributed toward the plaintiff's legal expenses, and one of them, Lothar Riba, coordinated collection of funds and communication of information to and from plaintiff's counsel, Gregory Sorg, of Bruckner Professional Corporation.

When the Superior Court (*Smith,* J.) denied the injunction in October, 1986, Mr. Sorg advised the plaintiff that he doubted further efforts would be worthwhile. There is evidence, however, that Mr. Riba and other neighbors informed Mr. Sorg that they wished to pursue the matter, and in November Mr. Sorg filed a notice of appeal, a copy of which he sent to the plaintiff. The latter testified that he believed he was required to sign the notice within thirty days if he wished to proceed, and he did nothing further until early December, when he received a statement for Mr. Sorg's services. This prompted him to advise Mr. Sorg that he wished to drop the case, and he explained that his neighbors were no longer willing to contribute toward its expenses. Mr. Sorg testified that he understood the plaintiff to be concerned only with expense, and he did not withdraw the notice of appeal.

When this court accepted the appeal, Mr. Sorg so advised Mr. Riba by a letter in which he explained the plaintiff's reluctance to spend more money on the case and asked whether Mr. Riba and the other interested people wished to shoulder the burden of going forward. Mr. Sorg sent a copy of the letter to the plaintiff, from whom he heard nothing. Mr. Riba, however, responded that he and most of the others wished to pursue the appeal.

The parties filed their respective briefs in May and June of 1986, and the case had been scheduled for a fall argument, when the direction of the proceedings took an abrupt turn. Early in July, Mr. Sorg filed a lengthy motion to strike portions of the defendant's brief. This was followed not only by an objection from the defendant, but also by the defendant's motion to dismiss the appeal on the ground that the plaintiff "never requested or desired that this case be appealed." Defense counsel's accompanying affidavit disclosed that the plaintiff told the defendant and, later, the defendant's counsel, that he had never requested Mr. Sorg to appeal, had advised Mr. Sorg the previous December that he had no interest in pursuing the matter, had never been told by Mr. Sorg that an appeal was being litigated in his name, and had had no knowledge that such an appeal was going forward until he received a copy of Mr. Sorg's motion to strike, which someone in Mr. Sorg's office had mistakenly sent him. Defense counsel went on to allege that the plaintiff told him that after receiving the copy of the motion to strike he called Mr. Sorg to emphasize that Mr. Sorg did not represent him and that he wished to disassociate himself from the case immediately. Defense counsel added, of his own knowledge, that Mr. Sorg had previously told him that people other than the plaintiff were interested in the suit, but that Mr. Sorg had never indicated he was not pursuing the appeal on the plaintiff's behalf. Defense counsel added that for three days he had tried without success to reach Mr. Sorg, and he moved for dismissal of the appeal and reimbursement of his client's expenses.

Mr. Sorg responded that until the plaintiff's most recent call to him he had never understood the plaintiff to have ordered him to drop the appeal or to have been concerned with anything except potential expense. In an apparent attempt to explain why he was not moving to substitute parties plaintiff, he explained that neither Mr. Riba nor the other neighbors then wished to proceed with the appeal, since construction of the offending garage had in the meantime been completed. While he thus admitted that neither the named plaintiff nor the plaintiff's unnamed financial backers wished to go forward, Mr. Sorg still refused to admit that the

appeal was over. Instead, he went on to argue that the court should not condone the defendant's "defiance," the neighbors' "lack of intestinal fortitude," or the plaintiff's "withdrawal," and he moved to be admitted as an "amicus curiae" with authority to prosecute the appeal. Defense counsel objected, pointing out that the plaintiff had not "withdrawn" from an appeal he had never authorized in the first place. Needless to say, we denied Mr. Sorg's motion and ordered the appeal to be dismissed.

The defendant's request for reimbursement remained to be dealt with. Although we denied the request as to charges incurred in the superior court, we appointed Senior Justice Arthur Bean of the superior court, RSA 491:2 (Supp. 1987), to hold an evidentiary hearing and report findings of fact bearing on the appropriateness of awarding "fees on appeal." We ordered that at the hearing "Attorney Sorg shall also show cause (1) why he should not be held in contempt of this court for misrepresentation of his authority to file and/or pursue an appeal on behalf of the plaintiff and (2) why this court should not refer this matter to the professional conduct committee."

Although Mr. Sorg testified at the hearing before Justice Bean, he presented no other witnesses, on the theory, as Justice Bean put it, "that contempt charging misrepresentation required an intent on his part and that only he could testify as to his state of mind." Justice Bean insisted, nonetheless, that efforts be made to call the plaintiff and Mr. Riba. The plaintiff was located and, at the court's request, defense counsel conducted an examination of him. Following the hearing's conclusion, Justice Bean reported the following findings:

"1. Following the Superior Court ruling of October 6, 1986, Attorney Sorg notified Mr. Keenan of the adverse decision, with a recommendation that no appeal should be taken.

2. Mr. Keenan did not request or agree to an appeal.

3. Attorney Sorg did not request or receive from Mr. Keenan permission to file an appeal.

4. The appeal filed by Attorney Sorg was in behalf of an unnamed client (Mr. Riba) whose name was not disclosed to counsel for the defendant.

5. The fact of filing of the appeal was not disclosed directly by Attorney Sorg to his client, Mr. Keenan.

6. Mr. Keenan was not aware that an appeal had been filed until July of 1987.

7. While Attorney Sorg, by affidavit, has indicated he represents other persons, no names were ever disclosed to anyone, including no disclosure at the present hearing.

8. Attorneys fees and expenses filed by Attorney Harvey in the sum of $5,070.50 are reasonable both as to the amount and the time involved, and were incurred as a result of the appeal.

It is further the finding of the undersigned that the failure of Attorney Sorg to properly inform his client and to get his client's permission before filing the appeal in the primary action shows a complete disregard of the responsibilities imposed on an attorney. However, the evidence presented was sufficient only to find that Attorney Sorg's disregard was due to inexperience and lack of common sense, rather than to an attempt on his part to defraud or conceal."

Before acting on Justice Bean's report, we ordered Mr. Sorg to show cause why he should not personally be assessed legal fees in the amount Justice Bean had found reasonable, and why he should not be found in contempt and be cited by complaint to the committee on professional conduct. Mr. Sorg's response, in a letter to the Chief Justice of this court, was an attempt to relitigate the facts, joined with legal arguments that no fees should be awarded against him without either a finding of contempt or a conclusion that his appeal had lacked legal merit. Although we declined either to proceed against Mr. Sorg for contempt or to refer the matter to the committee on professional conduct, we did award fees in the suggested amount, to be paid personally by Mr. Sorg.

Mr. Sorg then moved for reconsideration, claiming that our order of reference to Justice Bean had conditioned the possibility of a fee award on a finding of contempt, and that Mr. Sorg had prepared for the hearing on that assumption, without notice of any other claim of potential liability. In passing, he mentioned, without citation to any authority, that the award of fees against him was a retrospective application of law in violation of part I, article 23 of the Constitution of New Hampshire, and that the award violated his right to jury trial under part I, article 20. He argued at greater length that in the absence of recognized tort or contract liability, a lawyer has no duty to "third parties" and can not be subjected to fees in the absence of fraud, collusion or malice.

We scheduled an opportunity for Mr. Sorg to be heard orally on February 2, 1988. Defense counsel appeared, but Mr. Sorg was defaulted when he failed to do so. Mr. Sorg thereafter responded that notice of the hearing had never reached him, and he laced his motion to vacate the default with an abusive condemnation of his prior client, the plaintiff. We gave Mr. Sorg the benefit of the doubt on the claim that he had not received notice, struck the default, and rescheduled the hearing to March 1, 1988. Mr. Sorg appeared, as, again, did counsel for the defendant.

This factual and procedural history provides a basis for judging the soundness of Justice Bean's findings as against Mr. Sorg's attempts to put the facts in a better light, as well as for weighing Mr. Sorg's procedural and substantive arguments intended to bar any award against him. We see no need for further reference to the evidentiary record, which amply supports the findings, and we turn directly to procedural and legal issues.

Some of the matters Mr. Sorg has raised call for little comment. First, we find no support for Mr. Sorg's claim that he was not notified of potential liability for fees in the absence of a contempt finding; when we referred the matter of "fees on appeal" to Justice Bean, we ordered that Mr. Sorg "shall *also* show cause at the hearing" why he should not be found in contempt and brought before the conduct committee. (Emphasis supplied.) The only reasonable reading of the order was that the possibility of a contempt finding was additional to the potential award of fees, not that a contempt finding was a necessary condition of any fee award.

■■ Nothing more extensive need be said about some of Mr. Sorg's positions on the law. His off-hand invocations of the State Constitution are supported neither by argument nor by authority; we assume they were not seriously presented, and in any case their glancing character warrants no extended consideration. *See In re N.H. Disabilities Rights Center, Inc.*, 130 N.H. 328, 541 A.2d 208 (1988). Nor do we see any reason to dwell on the argument that fees should not be awarded if the defendant's legal position was weak and the plaintiff's appeal had merit; the request for fees is not predicated on the character of the appeal as frivolous in law, but as unauthorized by the named appealing party, and it is on that absence of authority that the fee award must stand or fall. As a final preliminary, we reject Mr. Sorg's argument that RSA 311:8 bars an award of fees against him without a finding of fraud, malpractice or contempt of court. That statute addresses grounds for disbarring a lawyer upon summary process, not for awarding attorney's fees in a given case.

Mr. Sorg invokes authority with more apparent seriousness, however, when he cites us to *Barber v. Company*, 80 N.H. 507, 120 A. 80 (1923), with its statement that an award against a lawyer of "compensatory costs" including counsel fees "must be sought in a suit for malicious prosecution or in proceedings for contempt." *Id.* at 511, 120 A. at 83. What is significant in the quotation is not, of course, its indication that a lawyer may be held to pay fees in a separate action for malicious prosecution or in a contempt proceeding, but its restriction of fee awards against lawyers to those two situations. Certainly, if the restriction were good law, no fee award could be entered against Mr. Sorg consistently with Justice Bean's findings. But the statement is not good law, and a look at history suggests that it never was.

Notably, the *Barber* court cited no authority for the restrictive proposition, and the uncertainty of its support becomes apparent as soon as we look for some reason to explain the statement. To begin with, we can rule out any suggestion that in 1923 either the malicious prosecution or the contempt procedure was particularly identified with lawyer defendants, for it is almost superfluous to cite cases on the books when *Barber* was decided in which lay defendants were held liable for malicious prosecution, *see, e.g., Cohn v. Saidel*, 71 N.H. 558, 53 A. 800 (1902), and for contempt of court, *see, e.g., State v. Buck*, 62 N.H. 670 (1883). Because, then, neither the tort action nor the contempt process was reserved for proceedings against lawyers, there does not appear to be any reason in principle why they should have been the only means to obtain counsel fees from a lawyer, unless they were also the only means for obtaining fees from opposing lay parties. It is clear, however, that they were not, and little research is necessary to demonstrate that at the time of *Barber* fee awards could be entered against lay parties outside the confines of malicious prosecution actions and contempt proceedings.

*Barber* itself recognized that there was statutory authority for fee awards in a single action against the losing party, *see Barber v. Company, supra* at 511, 120 A. at 83, although this authority was not much more than theoretical, given the then-express statutory limit of one dollar on fees as an item of costs. *Compare* PS 287:5 *with* RSA 525:13. (Although references to the latter statute as a source of jurisdiction over fees have naturally continued to crop up in our opinions, *see Manchester Housing Authority v. Belcourt*, 111 N.H. 367, 369, 285 A.2d 364, 365 (1971); *Utica Mutual Ins. Co. v. Plante*, 106 N.H. 525, 526, 214 A.2d 742, 743 (1965), the more recent

cases also recognize that a trial court has other sources of authority to render fee awards, independently of statute, *see infra.*)

A more significant rule of relevant law existing at the time of *Barber* was summarized in the later case of *Guay v. Association*, 87 N.H. 216, 177 A. 409 (1935), which spoke of the superior court's power to award counsel fees in "cases of enforcement of judicial authority." *Id.* at 221, 177 A. 413. This category not only included instances of "misconduct of a party amounting to contempt of court," *id.*, as described in *Barber*, but also extended to cases in which "a person retains possession of property after a judicial determination of the wrongful character of his possession, thus forcing the party wronged to the expense of further proceedings to recover possession or otherwise enforce his rights (*Fowler v. Owen*, 68 N.H. 270; *Manchester v. Hodge*, 75 N.H. 502; *Jacques v. Company*, 78 N.H. 248)." *Id.*

■ The citation to *Manchester v. Hodge*, 75 N.H. 502, 77 A. 76 (1910) was significant, for that case indicated, if it did not make clear, that a formal finding of contempt was not essential to an award of fees rendered in the exercise of a court's inherent judicial power to enforce its own decrees effectively. *See Indian Head National Bank v. Corey*, 129 N.H. 83, 86, 523 A.2d 70, 72 (1986). Since nothing in *Hodge* suggested any reason in principle why blameworthy counsel would not have been just as amenable as the litigant himself to a fee award under *Hodge*'s rule, we have to conclude that when *Barber* was decided, its unsupported statement quoted above was not sound authority for requiring a contempt finding or a malicious prosecution verdict before a lawyer could be subjected to a fee award.

*Barber* is therefore no authority to bar a fee award against Mr. Sorg. Neither, however, is it affirmative authority for making such an award in this case, and to decide whether we should subject a lawyer in Mr. Sorg's position to such liability we need to examine the recent course of the law's growth as it has developed from the rule expressed in *Hodge*.

■■ The modern law on the subject rests on *Harkeem v. Adams*, 117 N.H. 687, 691, 377 A.2d 617, 619 (1977), which affirmed *Hodge* and related cases by explaining that it was the "unnecessary" character of the judicial proceeding that justified the fee award, and by expanding *Hodge*'s principle generally to cover cases "[w]here an individual is forced to seek judicial assistance to secure a clearly defined and established right, which should have been freely enjoyed without such intervention. . . ." *Id.* The

recognized scope of authority to award fees thus expanded from compensation for those who are forced to litigate in order to enjoy what a court has already decreed, to include compensation for those who are forced to litigate against an opponent whose position is patently unreasonable. In such cases a litigant's unjustifiable belligerence or obstinacy is treated on an objective basis as a variety of bad faith, and made just as amenable to redress through an award of counsel fees as would be the commencement of litigation for the sole and specific purpose of causing injury to an opponent. *See Indian Head National Bank v. Corey, supra* at 87, 523 A.2d at 72; *see also Drop Anchor Realty Trust v. Hartford Fire Ins. Co.*, 126 N.H. 674, 680–81, 496 A.2d 339, 343–44 (1985). Thus we have recognized a constitutionally created court's power to award counsel fees in any action commenced, prolonged, required or defended without any reasonable basis in the facts provable by evidence, or any reasonable claim in the law as it is, or as it might arguably be held to be.

So, too, we have recognized that this authority rests not only on the essential judicial power to get the judicial job done once and for all, but also on the power subsumed under equity jurisdiction to compensate a party for his opponent's unreasonableness in prolonging unnecessary litigation. *See Harkeem v. Adams, supra* at 688, 377 A.2d at 617; *see also St. Germain v. Adams*, 117 N.H. 659, 662, 377 A.2d 620, 623 (1977); SUP. CT. R. 23; N.H. RULES OF PROFESSIONAL CONDUCT, R. 3.1, ABA MODEL CODE comments.

While our cases have previously had occasion to identify unnecessary litigation only by reference to the unreasonableness of a party's legal position, the implications of the development we have described point to a resolution of the case before us. For once we recognize that a fee award does not require proof of a subjectively intended injury, but may rest on the objectively gratuitous character of the litigation, we must be struck by the lack of any functional distinction between litigation that is "unnecessary" because one party's position has no merit, and litigation that is "unnecessary" because a named party never authorized the claim or defense asserted in his name. The one is no less pointlessly expensive in time, money and patience than the other, and courts and the parties who come before them are just as much victimized by unauthorized litigation as by litigation pursued without any justifying claim to merit. If, as we have held, the equity power of a constitutional court may be exercised to place the cost of bad faith on a responsible party, then there is no reason why it may not

likewise be invoked to charge the lawyer who carries on the fight when no party has empowered him to go forward.

 It is, however, not solely to vindicate principles of equity that we are empowered and obligated to charge a lawyer with the costs of unauthorized litigation, for we would reach the same result in exercising our jurisdiction to supervise the practice of law. *See Petition of N.H. Bar Ass'n*, 110 N.H. 356, 357, 266 A.2d 853, 854 (1970). Justice Bean found not only that Mr. Sorg's dereliction proceeded from "inexperience and lack of common sense," but that he brought the appeal in "complete disregard of the responsibilities imposed on an attorney." Like Justice Bean, we would have thought it went without saying that a lawyer warrants the truth of the representation implicit in every writ and appearance he enters, and in every appeal notice and brief he files, that the party whom he purports to represent has authorized the action the lawyer takes. The lawyer who acts without authority misrepresents his authority, and while he may misrepresent without a conscious intent to do wrong, we would set a contemptible standard for the conduct of the profession if we allowed him to charge an opposing party with the cost of his irresponsibility. He may be innocent of intending to perpetrate fraud, but he is not innocent of making a misstatement, and we may at least hope that such misstatements will be few if their out-of-pocket consequences are paid from the pockets of the lawyers who make them.

 We therefore decline to vacate our order awarding the defendant his counsel fees to be paid personally by Mr. Sorg. The latter does not dispute the finding that fees in the amount of $5,070.50 were reasonable up to the point of Justice Bean's report to us. Since then, the defendant's counsel has appeared before us twice for hearings requested by Mr. Sorg. We will assume that Mr. Sorg's failure to attend the first hearing was not his fault and will therefore leave the defendant's costs for that one where they lie. The defendant should be awarded his counsel fees for the second hearing, however, for the same reasons that call for the award of the other fees incurred in the appellate proceedings, and we accept defense counsel's figure of $707.50 for preparation and attendance. The clerk will accordingly issue an order requiring Mr. Sorg to pay $5,777.50 to the defendant.

*Motion for reconsideration denied; payment of additional defendant's counsel fees ordered.*

All concurred.