**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2022-0276, <u>City of Laconia v. Robert Kjellander</u>, the court on August 10, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, considered the oral arguments of the parties, and determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The defendant, Robert Kjellander, appeals orders of the Superior Court (<u>O'Neill</u>, J.; <u>Houran</u>, J.), which: (1) required him either to register or to restore for legal use on a public highway all but one of the unregistered vehicles on his property and to remove all "scrap, waste, reclaimable material or debris" from his property; (2) ruled that the plaintiff, the City of Laconia (City), was entitled to a civil penalty of $275 per day for each day the defendant failed to comply with the court's orders; and (3) awarded the City prevailing party attorney's fees and costs. <u>See</u> RSA 676:15, :17, I-II (2016). We affirm.

I.    <u>Relevant Facts</u>

The following facts either were found by the trial court or reflect the content of documents in the record. The defendant owns two lots on both sides of Roller Coaster Road in Laconia where he stores a variety of motor vehicles, sailboats, farm equipment, and miscellaneous scrap items.[1] The defendant's property is located in the "residential rural corridor district," where junkyards are not permitted as accessory uses. The City's zoning ordinance defines a "junkyard" as:

> Any business or any place of storage or deposit, whether in connection with another business or not, which has stored or deposited at the business or place: two or more unregistered motor vehicles which are no longer intended or in condition for legal use on the public highways; used parts of motor vehicles or old iron; metal, glass, paper, cordage, or other waste or discarded or secondhand material which has been a part, or is intended to be a part, of any motor vehicle, the sum of which parts or material shall be equal in bulk to two or more motor vehicles; or scrap, waste, reclaimable material or debris, whether or not stored, for sale or in

---

[1] At oral argument, the defendant's attorney represented that the property contained 50-55 motor vehicles and at least 35-40 boats.

the process of being dismantled, destroyed, processed, salvaged, stored, baled, disposed or other use or disposition.

Since 2004, the City has sent the defendant more than ten letters informing him that he is using his property as a junkyard in violation of the ordinance. In 2019, the City brought an action under RSA chapter 676 to enjoin the defendant from so doing. See RSA 676:15. The trial court granted the City's request for a preliminary injunction and ordered the defendant either to "cease adding items or material of any sort to contribute to the junkyard conditions on the property" or to obtain a variance from the City's zoning board of adjustment, site plan approval from the City's planning board, and a license from the City Council "to legally operate as a junkyard."

Following a two-day bench trial in the fall of 2021, the Superior Court (O'Neill, J.) found that the defendant's property constituted a junkyard under the ordinance because it contained "two or more unregistered motor vehicles that are no longer intended or in condition for legal use on the public highways." The court noted that the vehicles on the defendant's property "either cannot be driven in their current [state] or have not been moved in years." The court determined that the "photographic evidence of vegetation growing in and around" some of the vehicles did not support the defendant's assertion that he intended "to restore or use [them] in the future." Although the defendant asserted that some of the vehicles were farm vehicles or were used for blacksmithing, the court ruled that "neither claim satisfies the requirement of the Ordinance that [the vehicles] be intended or in condition for legal use on the public roadways." (Quotation and emphasis omitted.)

The court further determined that "registration alone removes a vehicle from the purview of the Ordinance," and, therefore, the defendant's registered vehicles did "not contribute to a determination as to the existence of a junk yard." The court also concluded that the defendant's sailboats did not contribute to the junkyard determination because sailboats are not self-propelled and, therefore, are not "motor vehicles." The court ordered the defendant either to register or restore to a condition for legal use on a public highway all but one of his unregistered vehicles within thirty days.

In March 2022, the trial court granted the City's subsequent motion for reconsideration. On reconsideration, the court determined that "miscellaneous scrap stored throughout the defendant's property" contributed to the finding that his property constituted a junkyard, and ordered the defendant to remove such material within thirty days. On reconsideration, the court also ruled that, because the City brought its action under RSA chapter 676, the City was entitled to a civil penalty of $275 for each day of non-compliance and to prevailing party attorney's fees and costs. See RSA 676:15, :17, I-II.

2

Thereafter, the defendant moved for reconsideration of the court's March 2022 order and objected to the City's affidavit of attorney's fees. The Superior Court (Houran, J.) denied the defendant's motion for reconsideration. The court also denied the defendant's request that the court reverse its order allowing the City to recover its prevailing party fees and costs, noting that such fees and costs are mandatory under the pertinent statute. See RSA 676:17, II.

To decide whether the defendant was correct that the amount requested was unreasonable, the court examined a range of factors before concluding that, with one exception, each of the billing line items "constituted reasonable and necessary actions by counsel for the City, billed at a reasonable rate." After subtracting the single objectionable line item, the court awarded the City $12,503.03 in attorney's fees and costs. This appeal followed.

II.    Appellate Arguments

A.  Meaning of the Word "Scrap" Under the Ordinance

On appeal, the defendant first argues that the trial court mischaracterized his personal property as "scrap" and, in so doing, violated his state and federal constitutional rights to possess such property. See N.H. CONST. pt. I, art. 2; U.S. CONST. amend. V. Because the defendant does not sufficiently develop his constitutional arguments for appellate review, we confine our analysis to whether the trial court erred when it ruled that certain of the defendant's property constituted "scrap" within the meaning of the City's zoning ordinance. See Keenan v. Fearon, 130 N.H. 494, 499 (1988) (explaining that "off-hand invocations" of constitutional rights supported by neither argument nor authority "warrant[] no extended consideration").

"When a trial court renders a decision after a trial on the merits, we uphold its factual findings and rulings unless they lack evidentiary support or are legally erroneous." Vention Med. Advanced Components v. Pappas, 171 N.H. 13, 28 (2018). "Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence." Id. (quotation omitted). We review the trial court's application of the law to the facts de novo. Id. We also review de novo the trial court's statutory interpretation and its interpretation of a municipal zoning ordinance. See Town of Lincoln v. Chenard, 174 N.H. 762, 765 (2022).

Our traditional rules of statutory construction govern our interpretation of a zoning ordinance. Id. "We construe the words and phrases of an ordinance according to the common and approved usage of the language, but where the ordinance defines the terms in issue, those definitions will govern." Working Stiff Partners v. City of Portsmouth, 172 N.H. 611, 615-16 (2019)

3

(citation omitted). "Furthermore, we determine the meaning of a zoning ordinance from its construction as a whole, not by construing isolated words or phrases." Id. at 616. "When the language of an ordinance is plain and unambiguous, we need not look beyond the ordinance itself for further indications of legislative intent." Id.

The defendant contends that the trial court mischaracterized as "scrap" materials he intends to use for blacksmithing and to construct a sugar shack. The defendant testified that the blacksmithing materials include an "old coal stove," "in pieces." And, according to the defendant's trial testimony and the photograph entered into evidence, the future sugar shack appears to be, as the City states, "a pile of wood sitting on a trailer."

The defendant argues that because the ordinance "primarily refer[s] to motor vehicles and the constituent parts thereof," the pieces of metal comprising the "old coal stove" and the wood pile he intends to use to construct a sugar shack do not constitute "scrap" under the ordinance. We disagree. Pursuant to its plain meaning, the ordinance is not limited to "motor vehicles and the constituent parts thereof." The ordinance specifically applies to "used parts of motor vehicles or old iron." The use of the word "or" in this clause demonstrates that the scope of the ordinance is broader than "motor vehicles and the constituent parts thereof." Reading the ordinance as a whole, we conclude that the clause "scrap, waste, reclaimable material or debris, whether or not stored, for sale or in the process of being dismantled, destroyed, processed, salvaged, stored, baled, disposed or other use or disposition" is not limited to materials that are or used to be part of a motor vehicle. The trial court, therefore, did not err by characterizing as "scrap" the materials that the defendant intends to use for blacksmithing and to construct a sugar shack.

B. Prevailing Party Attorney's Fees and Costs

The defendant next asserts that the court erroneously awarded the City prevailing party attorney's fees and costs pursuant to RSA 676:17, II. "The general rule in New Hampshire is that parties pay their own attorney's fees." Fat Bullies Farm, LLC v. Devenport, 170 N.H. 17, 29 (2017). However, "[a] court may award attorney's fees when specifically authorized by statute." Id. RSA 676:17, II constitutes such a statute. It provides:

> In any legal action brought by a municipality to enforce, by way of injunctive relief as provided by RSA 676:15 or otherwise, any local ordinance, code or regulation adopted under this title, or to enforce any planning board, zoning board of adjustment or building code board of appeals decision made pursuant to this title, or to seek the payment of any fine levied under paragraph I, the municipality shall recover its costs and reasonable attorney's

fees actually expended in pursuing the legal action if it is found to be a prevailing party in the action. For the purposes of this paragraph, recoverable costs shall include all out-of-pocket expenses actually incurred, including but not limited to, inspection fees, expert fees and investigatory expenses.

RSA 676:17, II.

"We will not overturn the trial court's decision concerning attorney's fees absent an unsustainable exercise of discretion." Fat Bullies Farm, LLC, 170 N.H. at 30 (quotation omitted). "To warrant reversal, the discretion must have been exercised for reasons clearly untenable or to an extent clearly unreasonable to the prejudice of the objecting party." Id. (quotation omitted). "In evaluating the trial court's ruling on this issue, we acknowledge the tremendous deference given a trial court's decision regarding attorney's fees." Id. (quotation omitted). "If there is some support in the record for the trial court's determination, we will uphold it." Id. (quotation omitted).

The defendant contends that the City was not entitled to recover any attorney's fees and costs under RSA 676:17, II because his property is not a junkyard under the ordinance. He argues that, like the ordinance in Chenard, the City's ordinance "regulates 'junk yards' as an 'industrial use,'" and does not govern "[t]he storage of one's own personal belongings on one's own property." Chenard, 174 N.H. at 770. He reasons that because he is merely "a collector of stuff to use for his own purposes in due course," and has "never wanted to run a junkyard business and never has run such a business," he is not using his property as a junkyard. The defendant is mistaken.

The ordinance in Chenard and the City's ordinance differ. The ordinance in Chenard did not define the term "junk yards," and listed "junk yards" as industrial uses of property allowed in the defendant's zoning district only by special exception. Id. (quotation omitted). By contrast, the City's ordinance specifically defines a junkyard as "[a]ny business or any place of storage or deposit, whether in connection with another business or not, which has stored or deposited at the business or place" certain materials. (Emphasis added.) Under the plain and ordinary meaning of the words used, a person can "stor[e] or deposit" the items listed at a "place," and thereby use his or her property as a junkyard, regardless of whether the person operates a junkyard business. See Chenard, 174 N.H. at 767 (interpreting the definition of the term "junk yard" in RSA chapter 236). In other words, according to the plain and ordinary meanings of the words used, the City's ordinance, unlike the ordinance in Chenard, applies to the "storage of one's own personal belongings on one's own property." Chenard, 174 N.H. at 770. Accordingly, the defendant's property constitutes a junkyard, even though he does not operate and has never operated a junkyard business.

5

The defendant next asserts that the City is not entitled to recover its attorney's fees and costs under RSA 676:17, II because "RSA 676:17 . . . does not apply in this matter." He argues that "[t]his case is about whether [his] property meets the definition of . . . a junk yard, and is not about any zoning or planning board issue." Although this is not an action "to enforce any planning board, zoning board of adjustment or building code board of appeals decision," it is an action "to enforce, by way of injunctive relief as provided by RSA 676:15 or otherwise," the City's zoning ordinance, and, therefore, was properly brought under RSA chapter 676. RSA 676:17, II.

The defendant next argues that "[p]aying such fees goes against sound public policy" because "[i]f citizens have an obligation to pay the town's attorney's fees on every occurrence where an ordinance is at issue in which the town prevails on that issue, citizens will be less likely to contest town over-reach in ordinance enforcement and interpretation." The defendant's public policy arguments are made in the wrong forum. See Doe v. Comm'r, N.H. Dep't of Health & Human Servs., 174 N.H. 239, 260 (2021). "Because our function is not to make laws, but to interpret them, any public policy arguments relevant to the wisdom of the statutory scheme and its consequences should be addressed to the General Court." Id. (quotation omitted).

The defendant next contends that the City is not entitled to recover attorney's fees because the trial court did not order him to remove the boats on his property. At oral argument, the defendant clarified that, to "prevail" within the meaning of RSA 676:17, II, the City had to succeed on more than half of its requests for injunctive relief. He argued that, because the trial court did not order him to remove his sailboats or registered vehicles from the property, the City did not succeed on at least a preponderance of its requests for relief, and, therefore, was not a "prevailing party" under RSA 676:17, II. This argument is insufficiently briefed for our review. See State v. Blackmer, 149 N.H. 47, 49 (2003).

In the alternative, the defendant argues that the City's attorney's fees must be prorated because the City was successful on some of its claims for relief and unsuccessful on others. See Van Der Stok v. Van Voorhees, 151 N.H. 679, 685 (2005) ("Where a party prevails on some claims and not others, and the successful and unsuccessful claims are analytically severable, any fee award should be reduced to exclude time spent on unsuccessful claims." (quotation omitted)). At oral argument, however, the City contended and the defendant conceded that he did not raise his fee proration arguments in the trial court. We, therefore, decline to review them. Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004).

We have reviewed the defendant's remaining appellate arguments and conclude that they lack merit and warrant no further consideration.  See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

MACDONALD, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**